*In re* ESTATE OF MANFORD F. HOLDER, Deceased.—(JAY ALFORD *et al.*, Petitioners-Appellants, *v.* DAVID J. DONOVAN, Respondent-Appellee.)

Fourth District   No. 13267

Opinion filed September 30, 1976.

36

Pree & Pree, of Springfield (Michael W. Hogan and Ronald W. Olson, of counsel), for appellants.

Thomas F. Londrigan, of Londrigan & Potter, P. C., of Springfield, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The administrators of the estate of Manford F. Holder brought this action initially as a citation to discover assets allegedly held by the respondent, David J. Donovan. By a subsequent petition, the estate sought to quiet title to and compel thereafter a conveyance of certain real property held by the respondent. After several hearings, the trial court denied petitioners' request for specific performance of the alleged contract to convey real property and entered an order finding the estate indebted to the respondent in the sum of $2891 for the use of the property after setting off certain expenditures made by the decedent in connection therewith. We affirm in part and reverse and remand in part.

The respondent purchased the subject property in 1968 for between $20,000 and $25,000. The land at that time was unimproved. While the record is not clear on this point, Donovan apparently placed a $52,000 mortgage on the property for the purpose of consolidating his purchase money mortgage and to construct a building. Donovan made the first payment on this mortgage, but all other payments were made by the decedent, Manford Holder, or, after his death, his estate. Holder was in possession of the property and owned the Precision Auto Body shop located in the building constructed on the premises. In addition to making mortgage payments of $470 per month, Holder paid the real estate taxes, property insurance and the expenses of maintenance on the property.

The intention of both Donovan and Holder was that the latter would eventually take title to the property. This intent was expressed to a loan officer of The First National Bank of Springfield, the mortgagee, and was

reflected on the payment records of that bank, where Manford Holder was noted as the contract purchaser. In fact, however, no contract between Donovan and Holder was ever executed. The respondent testified that he and Holder had an agreement to come to an agreement regarding the sale of the property. Holder died on April 10, 1970, without such an agreement ever being memorialized. This litigation ensued on behalf of Holder's estate.

■■■ The estate of Manford Holder claims it is entitled to a conveyance of the improved property as specific performance of the alleged oral agreement between Holder and Donovan to convey the property to the former. It is clear that the trial court was correct in its disposal of this claim. "Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then * * * ." (*Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 395, 256 N.E.2d 44, 46.) The respondent clearly stated that he and Holder had an agreement only to come to terms on an agreement. No formal contract or informal understanding was ever made as to the terms of the proposed sale. While the petitioners introduced into evidence an unexecuted contract for the sale of the property to Holder which was allegedly prepared by Donovan's attorney, that contract was never adopted by Donovan as an expression of his intent and cannot stand as proof of either an agreement or its terms.

■■ Even if proof of the agreement could be had, specific performance would still not lie because the terms of the agreement were not proven. To justify a decree of specific performance, our supreme court has held the proof of the terms of the agreement to be performed "must be clear, conclusive and so convincing as to leave no doubt in the mind of the court and it must be made to appear that the terms of the contract are certain, definite and unequivocal." (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 265, 170 N.E.2d 100, 106; *Pocius v. Fleck* (1958), 13 Ill. 2d 420, 150 N.E.2d 106.) Apart from the above-mentioned unexecuted contract, there is nothing in this record to show a meeting of the minds on the price or terms of the contemplated transaction for which specific performance is sought. Specific performance cannot be granted.

After denying specific performance, the trial court allowed the respondent's counterclaim for rent on the theory of compensation for Holder's possession and also allowed a setoff to the petitioners for sums spent in improving the property, giving rise to an equitable lien in their behalf. This computation forms the basis of the second issue raised by the petitioners and requires a further statement of the evidence adduced at the many hearings had in this case during its four-year history.

■■ The respondent testified that he paid for the construction of the building, specifically for the carpentry, masonry, plumbing and electrical work. There was some evidence that the respondent had also paid for at least a part of the iron work. Several witnesses for the petitioners testified that they had helped Holder in the construction of the building, either as a favor to Holder in return for automotive work done by the decedent, or, in two instances, for payment. The work for which value was unestablished at trial included painting, staking out the building, excavation, the installation of heating units and piping. It was established that Holder paid for the blacktopping of the parking lot outside the business which added $2000 to the value of the property. Secondly, one Connor testified that he and two friends had put up approximately 60 percent of the structural steel in the building at the behest of Holder who paid them $600. The petitioners' appraisal witness, William L. Livingstone, whose figures were adopted by the respondent, testified that in December of 1972 he appraised the subject property and determined its value to be $68,400. To this figure Livingstone added a six-percent annual increase to determine the appreciated value for 1973 and 1974 and decreased the 1972 amount by a like percentage to determine value in prior years back to 1969, the year the building was constructed. Livingstone testified that a fair rental value of the property would be computed on the basis of ten-percent; that is, a ten-percent return on the lessor's investment and payment by the lessee of real estate taxes, property insurance and the expenses of maintenance. Using the same six-percent appreciation figure, rent due the respondent for the decedent's or his estate's possession ranged from $473.41 per month in 1969 to $640.28 per month in 1974. The trial court's order using this method of computation correctly found a total amount of rent due to be $40,755. Against this figure the trial court set off $35,264 as the amount paid by Holder or his estate on the mortgage. The amount of rent due was further reduced by the amount of equitable lien generated by Holder's capital improvements to the property. The trial court allowed only $2600 to be set off in this matter representing $2000 for blacktopping and $600 for structural steel work. It is this amount of setoff which is at issue. Where one party performs valuable services and makes permanent improvements upon the premises of another under circumstances where the improvements should not have been expected to be a gratuity and where the equitable lienor reasonably expected either compensation or ownership of the improved premises, the party making the improvements is entitled to an equitable lien for the reasonable value of those improvements. (*Pope v. Speiser* (1955), 7 Ill. 2d 231, 130 N.E.2d 507.) The evidence here shows the respondent knew of the improvements

being made to his property. While the estate of Holder is not entitled to specific performance of the alleged contract to convey, the estate should have been allowed to recover the reasonable value of the permanent improvements placed on the premises. *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 215 N.E.2d 839.

■■ While the trial court correctly computed the value of the blacktopping and structural steel work, credit was not given for the value of other improvements made by Holder or at his behest. The fact that such improvements were gratuities from friends of the deceased or were paid for by auto body work done by him does not lessen the value added to the property for which respondent is liable. We therefore reverse the judgment of the trial court as to the amount of value added to the property by the deceased or his estate and direct that the question be retried as to the question of value added so that a correct computation may be made.

Affirmed in part, reversed and remanded with directions.

TRAPP, P. J., and GREEN, J., concur.