Le Roy Brunette and Walter C. Franke, Plaintiffs-Appellants, v. Vulcan Materials Company, a Corporation, Conlon-Collins, Inc., a Corporation, Charles A. Benson and Home State Bank of Crystal Lake, as Trustee Under Trust No. 1220, Defendants-Appellees.

Gen. No. 53,467.

First District, Third Division.
January 15, 1970.
Rehearing denied February 17, 1970.

Paul M. Lurie, of Chicago (Fohrman and Lurie, of counsel), for appellants.

Frank M. Covey, Jr., McDermott, Will & Emery, of Chicago, and Covey, McKenney & Powers, of Crystal Lake, for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs seek to obtain specific performance of an alleged contract to convey a parcel of real estate or in the alternative to recover damages for breach of contract. Defendants moved to dismiss the suit pursuant to sections 45 and 48 of the Civil Practice Act (Ill Rev Stats, c 110, §§ 45, 48 (1967)). As to section 45 defendants contend that the complaint does not state a cause of action and as to section 48, that the claim is barred by the Statute of Frauds. The trial court sustained defendants' motion and dismissed the suit and plaintiffs have appealed. The facts follow.

In 1956 plaintiffs purchased from Consumer's Company, the predecessor firm of Vulcan Materials Company, a five-acre parcel of real estate in McHenry Coun-

ty, Illinois. Plaintiffs allege that Consumer's agent agreed orally to give them priority over other purchasers when and if the defendants decided to sell an adjacent parcel of land consisting of approximately 8.5 acres, and it is this land which is the subject matter of the present litigation. Plaintiffs operated a successful glazing and glass business on the land they had purchased in 1956 and by 1964 required expanded facilities. To fulfill this need they began negotiations for the purchase of the adjacent tract owned by Vulcan and they allege that in March 1965 an agreement was reached. As evidence of that agreement plaintiffs offer two letters to them from Vulcan, one dated February 10, 1965, and the other dated March 16, 1965. Defendants' letter of February 10th suggested terms for the sale of the land and closed with the following:

"If you are interested in this, please notify us so that we may present it to our Board of Directors. Prior to presenting this to the Board, we would expect to receive a firm offer from you including earnest money . . . ."

Plaintiffs' response dated February 19, 1965, contained this passage:

"Terms would be $3000.00 earnest money payable upon approval of the sale by your staff, an additional $14,000 in cash *upon acceptance by your Board of execution of Articles of Agreement,* and payment of the balance in three equal annual installments at 6% interest on the unpaid balance . . . ." (Emphasis added.)

In a letter from Vulcan to plaintiffs dated March 16, 1965 the following pertinent passages appear:

"In reply to your letter of February 19, 1965, our management is *in substantial agreement to submit*

*to our Board of Directors* for its approval the sale of property owned by us adjacent to your company at Crystal Lake. The property they *will recommend for sale* is between your property and Switzer Boat Co.

"...

"*Subject to the drafting of an acceptable contract,* we feel it would be possible for you to raze, repair or remove. . . .

"If the above is agreeable, please notify us, and we will proceed to draft the contract." (Emphasis added.)

The reply which defendants contemplated came in a letter dated July 26, 1965, signed by Brunette on behalf of plaintiffs. In that letter plaintiffs informed Vulcan of the exact acreage as found by the survey they had taken and then stated:

"I suggest $13,500.00 cash (about 29%) and the balance at 6% in three equal annual installments. Since the land is not on the Assessor's books as a separate parcel, and since most of the year *will be gone before this matter is consummated,* I suggest you pay '65 taxes.

"...

"Kindly call to arrange a meeting for the purpose of drafting an agreement." (Emphasis added.)

Plaintiffs' amended complaint states in paragraph 9 that "On or about March 16, 1965, it was agreed between plaintiffs and Dwyer [defendants' agent] that Vulcan would sell Parcel A [the subject matter of this suit] to plaintiffs . . . ." It thus appears that plaintiffs considered the March 16th letter the basis for the existence of a contract.

The correspondence hereinbefore set forth contains repeated references to the preparation of a formal contract setting forth the terms of conveyance. Plaintiffs in their letter dated February 19, 1965, unequivocally make acceptance by Vulcan's Board of Directors and the execution of "Articles of Agreement" conditions precedent to the payment of the $14,000 cash down payment. When Vulcan responded to that letter on March 16, 1965 the conditional nature of these negotiations was again emphasized both as to the organizational requirement that the Vulcan Board of Directors approve the sale as well as the need for the drafting of an acceptable contract. Finally, on July 26, 1965 plaintiffs' own letter unmistakably characterizes the correspondence as preliminary. That letter speaks *in futuro* of when the matter will be "consummated" and closes with a request for a meeting so that an agreement can be drafted. Taken cumulatively, these statements characterize the letters as mere steps in a chain of negotiations and the law applicable thereto is clear.

■ Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon. Baltimore & Ohio S. W. Ry. Co. v. People ex rel. Allen, 195 Ill 423, 63 NE 262; Calo, Inc. v. AMF Pinspotters, Inc., 31 Ill App2d 2, 176 NE2d 1; Stephens v. Nixon, 338 Ill App 275, 86 NE2d 278.

■■ We proceed to consider the propriety of the court's order sustaining defendants' motion to dismiss the suit pursuant to the provisions of section 45 of the Civil Practice Act. If an essential and material allegation of fact is absent, the complaint may be dismissed. Byron v. Byron, 391 Ill 256, 62 NE2d 790. In the case before us the bare allegation set out in paragraph 9 of the amended complaint is a conclusion based on insuf-

ficiently pleaded facts. There is no allegation of offer or acceptance by either party unless we accept plaintiffs' view that the correspondence should be so construed. Since, as we have hereinbefore concluded, the letters all look forward to and are contingent upon the execution of a formal contract, they cannot be considered as an offer or acceptance. Any agreement derived from such correspondence is clearly an agreement only as to possible terms and not an agreement to sell. The former represents the typical negotiation process, whereas the latter is the legal event upon which all rights and duties are predicated. The court properly sustained defendants' motion to dismiss under section 45 of the Civil Practice Act.

■■ Defendants have also argued that even if we assume the existence of an oral contract, the suit should be dismissed as barred by the Statute of Frauds. Ill Rev Stats, c 59, § 2 (1967). This provides as follows:

> "No action shall be brought to charge any person upon any contract for the sale of lands, . . . unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, . . . ."

Plaintiffs contend that the correspondence between the parties can collectively fulfill the requirement of a written memorandum. They point specifically to the letters sent by Vulcan on February 10th and March 16, 1965. In a sale of real property the written contract must contain either by itself or by reference to other writings the names of the parties, a description of the land, the price, and the terms and conditions of sale and it must be signed by the party to be charged. Thompson v. Wiegand, 9 Ill2d 63, 136 NE2d 781. Vulcan's February 10th letter suggested alternative modes of payment, asking plaintiffs to respond with a firm offer for presentation to its Board of Directors. The letter of March 16th, al-

though apparently acknowledging receipt of an offer from plaintiffs, sought modifications relating to the size of the tract, and concluded, "If the above is agreeable, please notify us, and we will proceed to draft the contract." The correspondence referred to does not on its face purport to be a memorandum of an agreement in that it expresses the need for final acceptance by the Board of Directors as well as a further reply from plaintiffs concerning the size of the parcel ultimately to be sold. The intention to be bound by the terms of the correspondence is affirmatively shown to be absent. In Whitelaw v. Brady, 3 Ill2d 583, 121 NE2d 785, the court said (pp. 591-2):

> "It is the conclusion of this court, therefore, that Ramm's proposal in writing contemplated further negotiations . . . ; and that the final agreement of the parties, not being reduced to writing and signed by the party sought to be charged, was repugnant to the Statute of Frauds and incapable of specific enforcement."

The record conclusively establishes a defense to the plaintiffs' claim, and a motion under section 48 of the Civil Practice Act is a proper method for obtaining a disposition of the cause. Stanley v. Chastek, 34 Ill App2d 220, 180 NE2d 512.

Plaintiffs finally contend that they have alleged sufficient partial performance to remove this transaction from the operation of the Statute of Frauds. There are three requisites for the application of the doctrine of partial performance: (1) the performance must be in reasonable reliance on the contract, (2) the remedy of restitution must be inadequate, and (3) the performance must be one which in some degree evidences the existence of a contract and is not readily explainable on any other ground. Corbin on Contracts, Vol 2, § 425 (1950). In support of their contention plaintiffs aver that during

the year 1965 they ordered a survey of the land at a cost of $135; that they expended time and effort in obtaining a reduction of real estate taxes on the tract; that Vulcan knowingly allowed them to assume possession of the property and to repair structures and store materials thereon and that they grazed animals (two goats used for advertising purposes) on the land.

■ ■ To successfully invoke the doctrine of partial performance it is essential that the facts alleged be strongly evidential of a contract. The partial performance must itself play a part in the proof. Corbin on Contracts, Vol 2, § 430 (1950). That plaintiffs' actions are insufficient in this regard is manifest from their own statements. In a letter dated September 11, 1967 they say, "[we] are interested in purchasing the property *remaining* in your hands . . . ." (Emphasis added.) By way of explaining plaintiffs' use of the property during this period in the absence of a contract we note the following statement made by plaintiffs in a letter to defendants dated October 4, 1967: "From the day of our first contact with your company to the present our relations with your people have been most cordial, ranging from our use of neighboring property through installation of glass in your buildings and equipment . . . ." Whether that was merely neighborly indulgence on the part of defendants in the expectation that some agreement might ultimately be concluded is not material. The fact remains that there was as yet no underlying agreement between the parties as to the sale of the property. Accordingly the doctrine of partial performance is not available and the Statute of Frauds applies.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.