ALLOY and BARRY, JJ., concur.

FRANCIS BARRY, Plaintiff and Counterdefendant-Appellant, *v.* BERT V. JAMES, Defendant and Counterplaintiff-Appellee.—(FARMERS AND MECHANICS BANK, Intervenor.)

Third District   No. 78-467

Opinion filed August 17, 1979.

White and Marsh, of Ottawa (Alan B. Marsh, of counsel), for appellant.

Frank Renner, of Bartley, Fraser, Parkhurst, Hession and Renner, of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Francis Barry, a resident of Mercer County, Illinois, brought suit against defendant Bert V. James to recover $105,000 damages for breach of a contract to purchase a 50 percent interest in 12 imported cattle. The trial court entered summary judgment in favor of defendant, and plaintiff appeals, contending that the pleadings, depositions and affidavits presented one or more issues of material fact so as to render summary judgment improper in this cause.

According to the record on appeal, plaintiff has been engaged in importing Simmental cattle for breeding purposes since 1970. In conjunction with a partner in Canada, he owned 14 cattle imported from France, and in June of 1974, he purchased 10 female Simmental cattle in Ireland for $200,000. This transaction was financed by the Farmers and Mechanics Bank of Galesburg by a personal loan to plaintiff of $200,000. In December of 1974, plaintiff contacted defendant, a resident of Michigan, who was interested in investing in Simmental cattle. After several telephone conversations and a short meeting at an airport, defendant sent plaintiff a letter dated January 30, 1975, suggesting two names for a partnership, one for the United States operation and one for Canada, and proposing that defendant would obtain financing for the partnership. He enclosed a document listing 10 Simmental females, the price of each and a breeding plan for each. The plans called for two ova transplants from each cow. Defendant included a statement that he was interested in purchasing 50 percent of the listed cattle. On February 4, 1975, plaintiff responded with a letter indicating his agreement with the partnership names, the proposed line of credit and other details, and promising to forward the pricing of the Canadian cattle as soon as he received it.

In a subsequent letter dated February 10, 1975, defendant stated, in part:

> "Enclosed is another amended copy of our basic agreement. You will note that I have added the two Irish heifers at $10,000 each, also have extended the servicing of all 12 heifers to include the calf they will each bear naturally.
>
> Attached is my check for $5,000 to signify my intent to work this partnership out with you."

The enclosed document listed 12 Simmental females with the price of each and a breeding plan which included three named bulls to service each cow and which specified two ova transplants and one natural birth for each cow. The total price of the 12 cattle was $220,000. In this document, defendant said that he was interested in purchasing 50 percent of the listed cattle, bred as indicated in 1975, and at the end stated:

> "If the pricing and 1975 breeding program is agreeable to you please indicate by signing this offer and returning a copy to me.

After receipt of your agreement, I will forward a $5,000 check to bind the agreement, with final payment of $105,000 as soon as a partnership agreement can be drawn and signed."

Plaintiff signed the February 10 offer, returned it to defendant, and cashed the $5,000 check. A few days later plaintiff's attorney sent defendant a draft of a proposed partnership agreement. On February 28, 1975, defendant again wrote to plaintiff, and after observing that the market for Simmental cattle was now severely depressed, he proposed to reduce the total valuation of the cattle from $220,000 to $100,000. In addition, he demanded a veterinarian's certificate as to the health and breeding condition of each animal. Plaintiff responded with a letter refusing to agree to the reduced price, insisting that "a deal is a deal," and pointing out that the cattle had already been shipped to Tennessee for transplant operations pursuant to the agreement. Defendant refused to enter into the partnership and demanded the return of his $5,000.

Eventually plaintiff filed suit, and after extensive pretrial discovery, defendant's motion for summary judgment was granted. The trial court ruled that the formal execution of a written partnership agreement was viewed by the parties as a condition precedent to the vesting of rights and duties so there was no binding contract.

This appeal presents as the primary issue whether there was a genuine issue of any material fact so as to preclude entry of summary judgment.

■■ Under section 57 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, par. 57(3)), a motion for summary judgment will be granted if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. A reviewing court will reverse an order granting summary judgment if a material question of fact does exist. (*Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 355 N.E.2d 1.) In determining whether a genuine issue exists as to any material fact, inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from the facts, then a triable issue exists. (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.) A question which ordinarily is one of fact for a jury may become a question of law when the facts are undisputed, and such a case may be properly disposed of by summary judgment. *Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97.

In the case before us, plaintiff contends that the trial court improperly made a finding of fact that no contract existed between the parties when the existence of a contract was an issue in dispute which should have been submitted to trial. He also insists that whether the transaction was

complete depends upon whether the parties intended it to be complete and that questions of intent should be submitted to a jury. (*E.g., Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 156 N.E.2d 513.) In their depositions, plaintiff and defendant gave conflicting testimony as to what was intended by the February 10 letter, with plaintiff insisting that the parties had agreed on the terms of the partnership and that the partnership went into operation with the shipment of cattle to Tennessee, while defendant stated several matters were yet to be resolved and he did not intend to be bound by the "preliminary agreement" submitted on February 10, 1975.

We believe the controlling case is *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 256 N.E.2d 44, where the court ruled that no contract existed since the correspondence between the parties contained repeated references to the preparation of a formal contract. There, as here, the execution of a written agreement was a condition precedent to the payment of cash. The court stated:

"Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon. *Baltimore & Ohio S. W. Ry. Co. v. People ex rel. Allen*, 195 Ill. 423, 63 N.E. 262; *Calo, Inc. v. AMF Pinspotters, Inc.*, 31 Ill. App. 2d 2, 176 N.E.2d 1; *Stephens v. Nixon*, 338 Ill. App. 275, 86 N.E.2d 278." 119 Ill. App. 2d 390, 395, 256 N.E.2d 44, 46.

The two February 10 letters from defendant to plaintiff both state quite clearly that a partnership agreement is yet to be concluded. In the covering letter defendant expressly stated that he was enclosing a check "to signify my intent to work this partnership out with you." This statement is unambiguous; a partnership agreement is to be negotiated. The accompanying document, which listed the cattle, included a statement that final payment would be made as soon as a partnership agreement is drawn and signed. Since plaintiff does not deny that the purpose of the negotiations between the parties was to enter into a business venture which would buy, sell, and breed imported cattle, it is obvious that the February 10 list of cattle with prices and breeding plans is only a part of the proposed arrangement and does not contain all of the necessary elements of the partnership which plaintiff claims it represents. Actually plaintiff agrees that a written partnership agreement was to be executed in the future, but he insists that the written contract was not a condition precedent to a binding agreement. The record does not support such a conclusion.

■■ In view of the clear, unequivocal statement in the February 10 letter, that defendant intends to negotiate a written agreement based upon the

agreed-to cattle valuations, we conclude that the trial court ruled correctly when it held that, as a matter of law, the parties are not bound by any contract.

For the reasons stated, we affirm the judgment of the Circuit Court of Mercer County.

Affirmed.

ALLOY and SCOTT, JJ., concur.