QUAKE CONSTRUCTION, INC., Plaintiff-Appellant, v. AMERICAN AIR-
LINES, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—88—0043

Opinion filed March 29, 1989.

Bruce W. Plattenberger, of Chicago, for appellant.

Katten, Muchin & Zavis, of Chicago (Peter Petrakis and Barbara J. Steutzer, of counsel), for appellee American Airlines, Inc.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Quake Construction, Inc., appeals from an order of the circuit court of Cook County dismissing its third amended complaint with prejudice. We affirm in part, reverse in part and remand for further proceedings.

The facts alleged in the third amended complaint follow. In count I, plaintiff seeks damages for breach of contract. Plaintiff alleged that defendant American Airlines, Inc., hired defendant Jones Brothers Construction Corp. to prepare bid specifications, accept bids, and award contracts for American's employee facilities and auto shop expansion project at O'Hare Airport (hereinafter the Project).[1] By letter dated March 19, 1985, Jones Brothers solicited bids for the Project.

---

[1]American Airlines, Inc., admits that it hired Jones Brothers Construction Corp. to direct the Terminal Expansion Project. We will, therefore, refer to American Airlines, Inc., and Jones Brothers Construction Corp. as "Jones Brothers."

On or about April 1985, plaintiff submitted its bid for the Project. Thereafter, Jones Brothers notified plaintiff orally that it had been awarded the contract for the Project. Jones Brothers requested that plaintiff provide license numbers for the subcontractors that it would use on the Project. Plaintiff advised Jones Brothers that its subcontractors would not allow it to use their license numbers until they received a signed subcontractors agreement. Jones Brothers informed plaintiff that it would prepare a written contract for the Project in the form set forth in the bid solicitation materials. On April 18, 1985, Jones Brothers sent a "Letter of Intent" to plaintiff in which it advised plaintiff that it had elected to award plaintiff the contract for the Project. Sometime in April 1985, plaintiff and Jones Brothers reviewed a contract for the Project and agreed upon certain changes in the form contract. Jones Brothers then told plaintiff that it would prepare a written contract and submit it to plaintiff for signature. Plaintiff secured all subcontractors necessary to perform the work required for the Project. On April 25, 1985, plaintiff and its subcontractors attended a preconstruction meeting for the Project. At the meeting, Jones Brothers announced that plaintiff was the general contractor for the Project. Immediately after the meeting, however, Jones Brothers advised plaintiff that it was terminating plaintiff's involvement with the Project. Plaintiff alleged that it was damaged by the breach of the contract because it had expended substantial funds in procuring the contract and in preparing to perform under the contract. Plaintiff also alleged that it lost its profit under the contract.

Count II of the third amended complaint is based upon the theory of promissory estoppel. In count II, plaintiff alleged that Jones Brothers orally notified plaintiff that it had elected to award plaintiff the contract for the Project. Jones Brothers then sent the "Letter of Intent" (described above) to plaintiff. Plaintiff alleged that, both before and after the date of the "Letter of Intent," Jones Brothers informed plaintiff that: (1) a written agreement in addition to the "Letter of Intent," was not necessary for plaintiff to begin work on the Project; (2) a written agreement was being prepared by Jones Brothers and would be given to plaintiff for its signature; (3) execution of the written agreement was a mere formality; (4) the "Letter of Intent" was a binding contract; and (5) performance of the contract was required immediately. Plaintiff also alleged that Jones Brothers demanded that it: (1) expand its office space; (2) hire a Project manager; (3) secure all subcontractors necessary for the Project; (4) provide Jones Brothers with the license numbers of the plumber and mason who were to act as subcontractors on the Project; and (5) prepare itself to perform un-

der the contract. Plaintiff acceded to Jones Brothers' demands and incurred substantial expenses to comply with these demands. Plaintiff alleged that Jones Brothers knew that compliance with its demands would require a substantial expenditure of time and money. Plaintiff then alleged that, on April 25, 1985, Jones Brothers terminated plaintiff's involvement with the project. Plaintiff was damaged because it had expended substantial funds in procuring the contract and in preparing to perform under the contract. In addition, plaintiff lost its profit under the contract.

Count III of the third amended complaint is based upon breach of contract and waiver of condition precedent. In count III, plaintiff restated the allegations in count II. In addition, plaintiff alleged that, along with its subcontractors, it attended a preconstruction meeting for the Project. At the meeting, Jones Brothers announced that plaintiff was the general contractor for the Project. However, immediately after the meeting, Jones Brothers terminated plaintiff's involvement with the Project. Plaintiff also alleged that Jones Brothers used the license numbers of plaintiff's subcontractors to obtain a construction permit from the City of Chicago. Plaintiff then claimed that it was damaged by the termination of the contract.

Count IV of the third amended complaint is denominated "Breach of Contract/Impossibility of Contract." We will not set forth the allegations in count IV. Plaintiff has not raised the issue of impossibility of performance on appeal and that issue has thus been waived. 107 Ill. 2d R. 341(e)(7).

■ Prior to discussing the sufficiency of the remaining counts of plaintiff's third amended complaint, it will be helpful to discuss the principles that apply to a motion to dismiss. Plaintiff's third amended complaint was dismissed pursuant to a motion filed under section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Such a motion admits all well-pleaded facts in the complaint, and they must be taken as true. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 273, 504 N.E.2d 193; *Perlin v. Board of Education* (1980), 86 Ill. App. 3d 108, 111, 407 N.E.2d 792.) Any reasonable inferences that can be drawn from those facts must also be taken as true. (*Bolden v. General Accident, Fire & Life Assurance Corp.* (1983), 119 Ill. App. 3d 263, 266, 456 N.E.2d 306; *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1097, 407 N.E.2d 615.) Conclusions of law or conclusions of fact unsupported by allegations of specific fact are not admitted. (*Payne*, 152 Ill. App. 3d at 273; *Yardley v. Yardley* (1985), 137 Ill. App. 3d 747, 751, 484 N.E.2d 873.) The complaint should not be dismissed unless the pleadings disclose that no set

of facts could be proved that would entitle the plaintiff to relief. (*Yardley*, 137 Ill. App. 3d at 752; *Perlin*, 86 Ill. App. 3d at 111.) On review, the allegations of the complaint are to be interpreted in the light most favorable to the plaintiff. (*Perlin*, 86 Ill. App. 3d at 111; *Interway*, 85 Ill. App. 3d at 1097.) With these principles in mind, we turn to the substantive issues raised by the parties.

■ Count I of the third amended complaint purports to state a cause of action for breach of contract. A complaint for breach of contract must allege the existence of a contract between plaintiff and defendant, performance by plaintiff of the conditions imposed on him or her by the contract, breach of the contract by defendant, and the existence of damages as a result of the breach. (*Payne*, 152 Ill. App. 3d at 273.) The existence of a contract must be shown by facts indicating an offer, acceptance, and consideration. *Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028.

In count I of the third amended complaint, plaintiff alleged that it submitted a bid for the Project, in response to Jones Brothers' invitation to bid. Jones Brothers then sent a "Letter of Intent" to plaintiff in which it advised plaintiff that it had elected to award plaintiff the Project contract. Plaintiff secured all subcontractors necessary for the Project and attended a preconstruction meeting for the Project. Immediately after the meeting, Jones Brothers terminated plaintiff's involvement with the Project. Plaintiff alleged that it expended substantial funds in procuring the contract and preparing to perform under the contract and that it was damaged by Jones Brothers' breach of the contract. Plaintiff maintains that these allegations are sufficient to state a cause of action for breach of contract.

Jones Brothers contends, however, that the "Letter of Intent" is not a valid contract because it contains a condition precedent which prevented the formation of a contract. In the "Letter of Intent," Jones Brothers stated: "Jones Brothers Construction Corporation reserves the right to cancel this letter of intent if the parties cannot agree on a fully executed subcontract agreement." Since a subcontract agreement was never executed by the parties, Jones Brothers argues that the condition precedent to the formation of a contract failed and the "Letter of Intent" cannot provide the basis for an action by plaintiff.

■ Whether a writing that contains all the essential terms of a contract but contemplates a later execution of a formal agreement is itself a contract or merely negotiation depends on the intent of the parties. (*Inland Real Estate Corp. v. Christoph* (1981), 107 Ill. App. 3d 183, 185, 437 N.E.2d 658; *Interway*, 85 Ill. App. 3d at 1098.) If the

parties to the writing intended that it be contractually binding, that intention would not be defeated by the mere recitation in the writing that a more formal agreement was yet to be drawn. (*Interway*, 85 Ill. App. 3d at 1098.) However, if the parties intended that the execution of a formal agreement be a condition precedent, then no contract arises unless and until that formal agreement is executed. *Intini v. Marino* (1983), 112 Ill. App. 3d 252, 254, 445 N.E.2d 460; *Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 69, 415 N.E.2d 668; *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 742, 365 N.E.2d 1028.

◼ The determination of the intent of the parties may be a question of law or a question of fact, depending on the language of the writing. (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974, 418 N.E.2d 59.) If the language of the writing is unambiguous, the construction of the writing is a question of law, and the intention of the parties must be determined solely from the language used. (*Chicago Investment Corp.*, 93 Ill. App. 3d at 974; *Terracom*, 50 Ill. App. 3d at 744.) However, if the language is ambiguous, the construction of the writing is a question of fact, and parol evidence is admissible to explain and ascertain what the parties intended. *Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 241, 156 N.E.2d 513; *Inland*, 107 Ill. App. 3d at 185; *Interway*, 85 Ill. App. 3d at 1098.

Turning to the facts of our case, we are of the opinion that the "Letter of Intent" is ambiguous. In the "Letter of Intent," Jones Brothers stated that it had "elected to award the contract for the subject project to [plaintiff's] firm." Jones Brothers then described the scope of work required of plaintiff as the general contractor for the Project. Jones Brothers gave the location of the Project and the time schedule for the Project. Jones Brothers also stated that "this notice of award authorizes the work set forth in the following documents at a lump sum price of $1,060,568.00." (The list of documents is omitted.) Jones Brothers also stated that plaintiff "shall provide evidence of liability insurance" and certificates of commitment from MBE firms designated in plaintiff's proposal modification of April 13, 1985. These statements evince the intent of the parties to be bound by the "Letter of Intent." (See *Chicago Investment Corp.*, 93 Ill. App. 3d at 975 (court held that letter of intent did not "unambiguously demonstrate that the parties to it did not intend to be bound thereby." The letter contained a description of the properties, the total price, the earnest money amount and certain other terms.)) The schedule for completion of the Project supports this construction of the "Letter of Intent." The "Letter of Intent" is dated April 18, 1985. However, Jones Brothers

stated in the "Letter of Intent" that work was to begin "the week of April 22, 1985, and must be completed by August 15, 1985." A reasonable inference from these facts is that the parties intended that work on the Project would begin prior to execution of a formal contract and would be governed by the terms of the "Letter of Intent."

On the other hand, Jones Brothers stated in the "Letter of Intent" that a "contract agreement outlining the detailed terms and conditions is being prepared and will be available for [plaintiff's] signature shortly." Jones Brothers also stated that the contract "shall include MBE, WBE and EEO goals as established by [plaintiff's] bid proposal." These statements support the construction that the parties did not intend to be bound by the "Letter of Intent."

The "Letter of Intent" then concludes with the statement that "Jones Brothers Construction Corporation reserves the right to cancel this letter of intent if the parties cannot agree on a fully executed subcontract agreement." This statement is itself ambiguous and supports both constructions of the "Letter of Intent." The statement may be construed as a condition precedent which would prevent formation of a contract if the parties could not agree on the terms of the contract. However, there would be little need to provide for cancellation of the "Letter of Intent" if the parties did not intend to be bound by it.[2] Further, the statement implies that the parties could be bound by the "Letter of Intent" in the absence of a fully executed subcontract agreement.

The circuit court was of the opinion that the "Letter of Intent" is unambiguous and contains a condition precedent that the parties would not be bound until they entered into a formal contract. However, a question of fact existed as to the parties' intent. We are of the opinion that a determination of the parties' intent could not have been made solely on the basis of the "Letter of Intent." The circuit court should have considered parol evidence in making its determination. We conclude that the motion to dismiss count I was improperly granted.

Count II of the third amended complaint is based upon the theory of promissory estoppel. An action in promissory estoppel must

---

[2]See *Inland* (107 Ill. App. 3d at 185-86), wherein a letter of intent provided "[t]he contracts alone shall be the binding documents. (At which time this letter shall be null and void.)" The Illinois Appellate Court found that an ambiguity existed in the letter of intent. The court reasoned that the provision in the letter of intent evinced "the intent to be then bound, for [the court] fail[s] to see the necessity for a provision nullifying or voiding a writing in the future if the parties never intended for that writing to be binding from its inception."

assert the following elements: (1) an unambiguous promise is made by a party; (2) the party to whom the promise is made relies upon it; (3) the reliance is expected and foreseeable by the party making the promise; and (4) the party to whom the promise is made in fact relies upon it to his or her injury. *Yardley*, 137 Ill. App. 3d at 754; *Bolden*, 119 Ill. App. 3d at 266; *Perlin*, 86 Ill. App. 3d at 114; *St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Co. of America* (1979), 73 Ill. App. 3d 935, 942, 393 N.E.2d 611.

The circuit court determined that the "Letter of Intent" contains a condition precedent that the parties would not be bound until they entered into a formal contract. The circuit court also found that plaintiff could not have relied on any promises made by Jones Brothers in light of the "condition precedent" in the "Letter of Intent." Consequently, the circuit court dismissed count II as a matter of law. We have held above that whether or not the parties intended to be bound by the "Letter of Intent" is a question of fact to be determined by the circuit court. We have instructed the circuit court to consider parol evidence in making its determination. It follows that the circuit court should not have determined, as a matter of law, that the "Letter of Intent" contains a condition precedent and that plaintiff's reliance on the "Letter of Intent" was unjustified.

■ The dismissal of count II should be affirmed, however, if plaintiff has failed to plead any other element of promissory estoppel. In count II, plaintiff alleged that Jones Brothers orally notified plaintiff that it had elected to award the contract for the Project to plaintiff. This allegation is supported by the "Letter of Intent," in which Jones Brothers stated that it had "elected to award the contract for the subject project to [plaintiff's] firm as we discussed on April 15, 1985." Plaintiff also alleged that it expanded its office space; hired a Project manager; secured subcontractors for the Project; provided license numbers of certain contractors to Jones Brothers; and prepared itself to perform the work required for the Project. Plaintiff claimed that it incurred these expenses at the request of Jones Brothers. We believe that the allegations in count II include the other elements of promissory estoppel.

■ In count III of the third amended complaint, plaintiff assumed that the "Letter of Intent" contains a condition precedent to formation of a contract. Plaintiff then alleged that Jones Brothers waived the condition precedent by informing plaintiff that the "Letter of Intent" is a binding contract and that performance of the work was required immediately. Plaintiff correctly notes that a party may waive a condition precedent to the formation of a contract. (*Swerdlow v. Mal-*

*lin* (1985), 131 Ill. App. 3d 900, 904, 476 N.E.2d 464; *Grill v. Adams* (1984), 123 Ill. App. 3d 913, 918, 463 N.E.2d 896; *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 52-53, 360 N.E.2d 551.) When a condition precedent is waived by a party, performance of the duty that was originally subject to the occurrence of the condition then becomes due. *Grill*, 123 Ill. App. 3d at 918.

We need not decide, however, whether Jones Brothers waived the alleged condition precedent. In light of our holding that the "Letter of Intent" is ambiguous and that the circuit court must determine whether it contains a condition precedent, we believe that the dismissal of count III was premature. Accordingly, we reverse and remand.

For the aforesaid reasons, we affirm the dismissal of count IV and reverse the dismissal of counts I, II and III. We remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

FREEMAN, P.J., concurs.

JUSTICE McNAMARA, dissenting:
I respectfully dissent from the majority holding reversing the trial court's dismissal of this action and finding the letter of intent to be ambiguous. I would affirm the dismissal on the basis that the letter of intent unambiguously demonstrates the parties' intent to make the execution of a formal agreement a condition precedent to a binding contract.

It has long been established in Illinois that parties may expressly provide that negotiations are not binding until a formal agreement is reduced to writing and executed. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 481 N.E.2d 712; *Baltimore & Ohio Southwestern R.R. Co. v. People ex rel. Allen* (1902), 195 Ill. 423, 63 N.E. 262.) The determination of whether such a provision is ambiguous is initially a question of law. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 365 N.E.2d 1028.) An ambiguous contract is one capable of being understood in more senses than one. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.*, 50 Ill. App. 3d 739, 365 N.E.2d 1028.) The parties are entitled to shape a letter of intent as they wish. *Feldman v. Allegheny International, Inc.* (7th Cir. 1988), 850 F.2d 1217, 1221, citing *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.

The key language in the letter of intent in the present case is as follows:

> "A contract agreement outlining the detailed terms and conditions is being prepared and will be available for your signature shortly. *** [Defendant] reserves the right to cancel this letter of intent if the parties cannot agree on a fully executed subcontract agreement."

I find that the foregoing language is incapable of being understood in more senses than one. We have repeatedly held such language to be unambiguous, permitting the court to discern the parties' intent from the writing itself as a matter of law (see *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615; *Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 577, 342 N.E.2d 65), and absent ambiguity, the parties' intent cannot be discerned from parol evidence beyond the four corners of the writing. See, *e.g., Feldman v. Allegheny International, Inc.*, 850 F.2d at 1221 (no contract exists where unambiguous statement requires execution: " 'shall be set forth in the definitive agreement executed by the parties' "); *Interway, Inc. v. Alagna*, 85 Ill. App. 3d at 1101 (no contract exists where unambiguous letter of intent states "our purchase is subject to a definitive Purchase and Sale Contract to be executed by the parties"); *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.*, 50 Ill. App. 3d at 744-45 (no contract exists where unambiguous letter of intent states counsel would "prepare a draft of the definitive agreement"; a "standard form contract [was being] drawn up"; they intended "to enter into a definitive written agreement"; the letter was "expressly conditioned upon our entering into a mutually satisfactory definitive written agreement"; and "no contractual relationship shall exist between the parties unless and until the definitive agreement shall have been executed in writing"); *S.N. Nielsen Co. v. National Heat & Power Co.* (1975), 32 Ill. App. 3d 941, 943, 337 N.E.2d 387 (no contract exists where letter of intent states a "formal contract will be issued in the very near future"); *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 393-94, 256 N.E.2d 44 (no contract exists where writings repeatedly referred to preparation of a formal contract as a condition precedent; required "acceptance by your Board of execution of Articles of Agreement"; and was "[s]ubject to the drafting of an acceptable contract"). See also *Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 415 N.E.2d 668; *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.* (1984), 130 Ill. App. 3d 798, 474 N.E.2d 1245, *aff'd* (1986), 114 Ill. 2d 133, 500 N.E.2d 1.

I believe that to hold the language here to be ambiguous would ignore these cases and would deprive negotiating parties of all precedence and guidance in how best to draft a letter of intent so as to avoid a contractually binding effect.

The majority reasons that an ambiguity arises when the quoted statements are considered with the letter's inclusion of a description of the scope of work, project location and time schedule. These items, however, would typically be included in any initial request for bids. The majority also points to the letter's reference to a lump sum price. The letter, however, never goes beyond the bid price. (See *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc.* (N.D. Ill. 1988), 678 F. Supp. 193, 196, citing *S.N. Nielsen Co. v. National Heat & Power Co.*, 32 Ill. App. 3d 941, 337 N.E.2d 387 (letter of intent never negotiated beyond bid price and retained power to reject).) Even the most preliminary discussion of a major project such as this, to expand an airline's employee and auto shop facilities, would be meaningless without reference to such basic information.

Moreover, in many cases we have held language requiring a written, executed contract to be unambiguous where the letters of intent included more detailed information as to the terms. See *e.g.*, *Interway, Inc. v. Alagna*, 85 Ill. App. 3d 1094, 407 N.E.2d 615 (where letter of intent referred to bonuses, brokerage fees, warranties, insurance, noncompetition restrictions and discharge of a note, court found the terms lacked specificity and would require clarification before they would acquire contractual finality); *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.*, 50 Ill. App. 3d 739, 365 N.E.2d 1028 (letter of intent details price terms, net lease, mortgage provisions, broker's commission and closing costs; court finds no intent to be bound by writings); *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d at 396 (writings include terms regarding description of land, survey results, exact acreage, method of payment, interest rates for installments, other price terms, payment of taxes; court finds writings are an "agreement only as to possible terms" in a "typical negotiation process").

I would conclude that the terms touched on in the letter of intent reveal nothing more than the tentative, inconclusive nature of the agreement. They are far from reflecting contractual finality. The letter on its face gives rise to no ambiguity. The parties evidenced an intention to reduce an agreement to writing and to execute that agreement as conditions precedent to a binding contract. Thus, there can be no contract until then, even if any actual terms might have

been agreed upon by the parties. See *Baltimore & Ohio Southwestern R.R. Co. v. People ex rel. Allen*, 195 Ill. 423, 63 N.E. 262; *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 256 N.E.2d 44.

Furthermore, I disagree with the majority's finding of a "reasonable inference" that the parties "intended that work *** began prior to the execution of a formal contract and would be governed by the terms of the 'Letter of Intent.' " (181 Ill. App. 3d at 914.) The majority relies on the letter's date of April 18 and the indication that work was initially to begin in the week of April 22 (later pushed forward by defendant). The letter also states, however, that the formal contract was "being prepared and will be available for your signature shortly." Moreover, a letter of intent may authorize subcontractors to proceed without waiving the express conditions precedent to a binding contract. *S.N. Nielsen Co. v. National Heat & Power Co.*, 32 Ill. App. 3d 941, 337 N.E.2d 387.

The majority also points to the language that defendant "reserves the right to cancel this letter of intent if the parties cannot agree on a fully executed subcontract agreement." The majority reasons that "there would be little need to provide for cancellation of the 'Letter of Intent' if the parties did not intend to be bound by it." (181 Ill. App. 3d at 914.) This reasoning ignores the many functions of a letter of intent, including the underlying axiom that parties may agree to the course of, and discontinuance of, their own negotiations. (See *Feldman v. Allegheny International, Inc.*, 850 F.2d 1217.) Moreover, the majority's reasoning that this language "implies that the parties could be bound by the 'Letter of Intent' in the absence of a fully executed subcontract agreement," (181 Ill. App. 3d at 914), weakly asserts, with circular reasoning, that the letter is a binding document because one party can require the other to be bound by it.

A careful examination of *Inland Real Estate Corp. v. Christoph* (1981), 107 Ill. App. 3d 183, 437 N.E.2d 658, shows that it differs from the present case in a significant respect. The letter of intent in *Inland* expressly declared an intent to be presently bound, *prior* to any execution of a formal contract. That binding effect was to become null and void, but not until the time at which the final contracts themselves became binding: "The *contracts* alone shall be the binding documents. (*At which time* this letter shall be *null and void*.)" (Emphasis added.) *Inland*, 107 Ill. App. 3d at 185-86.

In contrast, the present case involves language which never indicates an intent to be presently bound. Instead, it merely recites that at some point, "if the parties cannot agree" on a contract, the letter of intent will cease to function as a precursor to the final executed

contract. See *Feldman v. Allegheny International, Inc.*, 850 F.2d 1217.

I would conclude that the letter of intent here is not a contract, but instead is some lesser undertaking by the parties and a precursor to a valid and enforceable agreement.

I would affirm the trial court's dismissal of this action.