TERRACOM DEVELOPMENT GROUP, INC., Plaintiff-Appellant, *v.* COLEMAN CABLE AND WIRE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 76-1278

Opinion filed July 6, 1977.

Donald L. Johnson and William Biederman, both of Chicago (Marks, Katz, Walker & Blatt, of counsel), for appellant.

Peter C. John, of Chicago (Isham, Lincoln & Beale, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Terracom Development Group, Inc. (plaintiff) brought action to require Coleman Cable and Wire Company (defendant) to perform specifically an alleged contract for the sale of real estate by defendant. At the conclusion of plaintiff's case, the trial judge entered judgment in favor of defendant. Plaintiff appeals.

The evidence shows that defendant owned a large parcel of improved industrial real estate in River Grove, Illinois. On November 24, 1975, defendant retained the services of a broker to sell the property for $3 million as part of a transaction whereby a buyer would lease the property back to defendant. The agreement contained a general statement of acceptable terms for the proposed lease such as rental of $1.20 per square foot computed on a basis of 280,000 square feet with rent adjustment after 10 years in event of change in the Consumer Price Index; defendant to accept a second mortgage in the amount of $800,000 with interest only payable annually at 9 percent and with cancellation of the mortgage in the event defendant should default on the lease.

The services of the broker were rendered by Rodger Chenore who brought the matter to the attention of plaintiff. On November 26, 1975, Richard C. Haskell, vice president of plaintiff, addressed a letter to the broker stating, "we are prepared to enter into a binding contract on the following terms and conditions." The letter stated that if defendant was in accord with these conditions "please have them acknowledge below and we will proceed immediately to have a standard form contract drawn up and executed." The letter contained statements concerning a number of items of importance in a transaction of this type and magnitude including price, provision for the net lease back to defendant; a first purchase money mortgage to be obtained by plaintiff as buyer with a second mortgage of $800,000 with interest at 7 percent per annum payable monthly, due 10 years and 6 months from date of closing and also provisions for closing, broker's commission and other such matters. The letter closed with the statement, "In the event that this offer is acceptable to the sellers, please have them acknowledge on the space below and we

will proceed to draw a formal contract." The offer was to be accepted within 8 days. The document as written was never formally accepted by defendant.

It would be virtually impossible, and it is unnecessary, to detail in this opinion each and all of the steps taken by both sides in this rather complicated transaction. The negotiations continued between the parties for a number of months, until February 1976. There were many meetings between the parties and their attorneys and many documents and revised drafts passed between them. The broker also played an active role in the negotiations. The details of these various proposals varied from time to time. For example, it is apparent, as above noted, that there were variations between the agency agreement of November 24, 1975, and the letter addressed to the broker by plaintiff on November 26, 1975. These variations and others of greater or lesser importance continued throughout the negotiations which ensued.

On December 11, 1975, after the 8-day period specified in plaintiff's letter of November 26, 1975, defendant, acting by Ted E. Gaty, its president, wrote to Rodger Chenore, the broker, and stated that defendant was prepared to accept the offer in plaintiff's letter of November 26, 1975, upon several conditions. The letter set forth various conditions relating to price of the premises; the net lease; the mortgage provisions; the broker's commission and certain of the closing costs. This letter also contained certain language here reproduced in full:

"This letter of intent is not binding upon us in any way nor is the conditional offer contained herein binding upon us except to the extent that it reflects our intent to enter into a definitive written agreement with respect to the sale of the property described above upon the terms and conditions herein contained. This letter of intent is expressly conditioned upon our entering into a mutually satisfactory definitive written agreement in the form satisfactory to our counsel.

Unless the definitive written agreement referred to above is duly executed in writing and signed by the parties on or before January 15, 1976, regardless of the reason for such agreement not having been so executed, neither party shall be under any obligation to the other irrespective of this letter and irrespective of this letter and irrespective of any negotiations, agreements, or understandings heretofore or hereafter existing between the parties, it being understood that no contractual relationship shall exist between the parties unless and until the definitive agreement shall have been executed in writing.

If the foregoing is acceptable, please sign a copy of this letter

enclosed for that purpose, return it to us, and we will instruct our counsel to prepare a draft of the definitive agreement for a review by your counsel and for discussion by both of us."

This letter was signed by defendant and the broker but was never signed by plaintiff.

On December 12, 1975, plaintiff wrote defendant that plaintiff was prepared to accept the "counter proposal [*sic*] dated December 11, 1975 * * *" subject to certain changes such as modification of the interest rate and a change in the disposition of the rental increase at the beginning of the tenth year of the lease. This letter was duly signed by Richard C. Haskell, vice president of plaintiff, and on December 15, 1975, was signed as "Accepted" by Ted E. Gaty, president of defendant. The testimony before the trial court brought out all of these documents and many more which passed between the parties and their attorneys and also brought out various oral negotiations that continued from time to time. However, as we view the situation before us, the contractual rights of these parties should be and they are governed by the so-called counterproposal of defendant, dated December 11, 1975, as amended and accepted by the letter from plaintiff, dated December 12, 1975, including acceptance of the latter document by defendant on December 15, 1975. In view of the importance of defendant's letter, dated December 11, 1975, it is necessary to consider its legal significance.

The courts of Illinois have had previous occasions to deal with agreements of this type in which the contracting parties specifically provide that the preliminary documents signed by them are not binding upon either except to the extent that such documents evidence the intention of the parties not to be bound to any agreement until both have executed a mutually satisfactory definitive agreement. This is virtually the language contained in the letter of December 11, 1975, with the further statement, "that no contractual relationship shall exist between the parties unless and until the definitive agreement shall have been executed in writing." In *Baltimore & Ohio Southwestern R.R. Co. v. People ex rel. Allen* (1902), 195 Ill. 423, 428, 63 N.E. 262, the supreme court quoted the following language from 7 American and English Encyclopedia of Law 140 (2d ed. 1898):

" 'Where the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done. And this is true although all terms of the contract have been agreed upon. But where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing will not negative the existence of a present contract.' "

This early statement of the law is not the last enunciation of the

principle by the courts of Illinois. In *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 256 N.E.2d 44, *appeal denied,* 43 Ill. 2d 397, this court considered a suit for specific performance of an alleged contract for sale of real estate. The court affirmed a ruling of the circuit court dismissing the action.[1] The parties exchanged a number of letters during which defendant, the alleged seller, referred to the need of approval of the agreement by its corporate board of directors, the execution of articles of agreement and the fact that the sale was subject to the drafting of an acceptable contract. After describing this interchange of correspondence "as mere steps in a chain of negotiations" and stating that the law applicable thereto was clear, this court held (119 Ill. App. 2d 390, 395):

> "Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon. Baltimore & Ohio S. W. Ry. Co. v. People ex rel. Allen, 195 Ill 423, 63 NE 262; Calo, Inc. v. AMF Pinspotters, Inc., 31 Ill App 2d 2, 176 NE2d 1; Stephens v. Nixon, 338 Ill App 275, 86 NE2d 278."

■■ More recently we note the citation of *Baltimore & Ohio Southwestern R.R. Co.* by this court in *S. N. Nielsen Co. v. National Heat & Power Co.* (1975), 32 Ill. App. 3d 941, 946, 337 N.E.2d 387. There, this court approved dismissal by the trial court of an action for damages upon an alleged contract. The situation involved a letter of intent sent by a general contractor to a proposed subcontractor which stated, "Formal contract will be issued in the very near future." (32 Ill. App. 3d 941, 943.) This court pointed out that, "the law is clear that where the parties made the reduction of an agreement to writing and its signature by them a condition precedent to its completion, it will not be a contract until that is done." 32 Ill. App. 3d 941, 946.

In our opinion then, the basic problem first presented by this record is one of classification. We must determine whether these parties intended that a reduction of their agreement to a formal writing and their signature upon that writing was a condition precedent to the formation of a contract or constituted merely a reference to a future contract in writing. This is an issue of intention of the parties. Determination of the intention of the parties may be an issue of fact or an issue of law depending upon the wording of the documents before the court. The definitive point of our analysis must be the expressions of intent found in defendant's letter of December 11 and plaintiff's responding letter of December 12, signed by defendant's president as "Accepted" on December 15.

---

[1] We note that the experienced and learned trial judge in the instant case was the trial judge in *Brunette.*

The letter of December 11, 1975, specifically states that it is not binding upon defendant. It states that the conditional offer contained in the letter is only binding to the extent that it reflects defendant's intention "to enter into a definitive written agreement with respect to the sale of the property * * *." If this were not sufficient, the document proceeds to state that it "is expressly conditioned upon our entering into a mutually satisfactory definitive written agreement in the form satisfactory to our counsel." Continuing even further, the document states defendant's understanding "that no contractual relationship shall exist between the parties unless and until the definitive agreement shall have been executed in writing." Finally there is a statement in the document concerning instruction of defendant to its counsel "to prepare a draft of the definitive agreement for review by your counsel and for discussion by both of us."

The courts of Illinois have defined an ambiguous writing as " 'one capable of being understood in more senses than one * * *.' " *Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 919, 326 N.E.2d 33, quoting *First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 341, 260 N.E.2d 99. See also *In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 841, 327 N.E.2d 317.

■■ Under this definition it would seem that the language of the letters which passed between the parties is not ambiguous but is patently clear and definite. There should be no room for difference of opinion in the conclusion that the only result apparent from this language is that neither party would be bound to the transaction until both had signed a formal and definitive contract.

The classification of this agreement was initially a question of law for the trial court. It has been repeatedly held in Illinois that whether any contract is or is not ambiguous is a question of law for initial determination by the trial court. (*Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 261, 343 N.E.2d 544; *Nerone v. Boehler* (1976), 34 Ill. App. 3d 888, 891, 340 N.E.2d 534; *Gaffney v. Burns Detective Agency International, Inc.* (1973), 12 Ill. App. 3d 476, 480-81, 299 N.E.2d 540.) When the trial court has thus classified the contract, if it is found to be free from ambiguity then the intention of the parties must be determined solely from the language used. (*Nitrin, Inc. v. Bethelehem Steel Corp.* (1976), 35 Ill. App. 3d 577, 594, 342 N.E.2d 65, *appeal denied*, 63 Ill. 2d 552, citing *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886.) On the contrary, if the trial court determines that the agreement is ambiguous, "parol evidence is admissible to explain and ascertain what the parties intended." *Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 241, 156 N.E.2d 513. See also *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683.

We note also the language in the letter from plaintiff dated November 26, 1975. The first paragraph spoke of having "a standard form contract drawn up and executed." The closing paragraph stated that in event the offer set out in the letter was acceptable, "we will proceed to draw a formal contract." This is virtually an affirmation of the same intent later expressed in defendant's letter of December 11, 1975, concerning the strong statement that neither party would be bound unless and until the definitive written agreement was executed.

■■ ■ In the case before us the trial court held that the agreement between these parties was unambiguous. This was a question of law for resolution by the trial judge. We agree with the result reached. It follows that it was unnecessary and would have been legally improper to resort to parol evidence to determine the meaning of the agreement. Therefore, we need not apply the standard to be used in reviewing the decisions of trial courts where judgment has been entered in favor of a defendant at the close of plaintiff's case. The trial court here was not obliged to consider the credibility of the witnesses or the weight and quality of the evidence. (See *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58, 349 N.E.2d 399.) The trial court was solely obliged to determine whether or not the language used by the parties was ambiguous. Predicated upon the conclusion of the trial court which we approve, that the parties had never entered into a binding contract, in accordance with their intention it follows necessarily that specific performance should be denied.

Counsel for plaintiff have made a valiant and persistent effort to convince us that another result should be reached. We will comment on their contentions.

■■ Plaintiff urges that defendant has failed to negotiate in good faith by refusing to perform the necessary paper work. This argument is not supported by the record. In our opinion, both of these parties negotiated in good faith and we cannot agree that reliance by defendant upon the plain language and intent of the parties can or should be construed as a lack of fair dealing.

■■ Plaintiff urges that all of the various writings executed by the parties taken together are sufficient to meet the statute of frauds and that all of the terms and provisions of the completed transaction may be gleaned from the various portions of the documents executed by the parties. This contention was made, carefully considered and rejected in *Brunette.* (119 Ill. App. 2d 390, 396-97.) The reasoning of the court there, fully applicable to the instant case, is that the record shows that the parties did not intent to be bound by the terms of their correspondence. Both of these parties clearly manifested their intention to be bound only by a formal, definitive, written and executed contract. Similarly we must reject

plaintiff's argument that part performance removes the bar of the statute of frauds. Since we have concluded that no contract for the disposition of the realty came into existence, no statute of frauds issue could arise. Plaintiff cites *Conness v. Conness* (1968), 94 Ill. App. 2d 281, 236 N.E.2d 753, for the general proposition that the statute of frauds is aimed at prevention of fraud and injustice. In *Conness*, the court affirmed dismissal of a complaint predicated upon creation of a tenancy by virtue of an oral agreement made some 20 years prior for continuation of plaintiff's tenancy. The court pointed out that there was no showing there that plaintiff "in reliance upon the purported promise changed his position to his disadvantage, detriment or loss." (94 Ill. App. 2d 281, 285.) The court noted that plaintiff showed only "the loss of some future advantage dependent upon future performance of the agreement by both parties." (94 Ill. App. 2d 281, 285.) The decision in *Conness* accentuates the justice of denial of specific performance in the case before us.

We will comment briefly upon some of the other authorities cited by plaintiffs. In *1130 President St. Corp. v. Bolton Realty Corp.* (1949), 300 N.Y. 63, 89 N.E.2d 16, defendant as lessor gave plaintiff a written option to lease. This provided that a lease would be entered into by defendant "in form satisfactory to the tenant." (300 N.Y. 63, 66, 89 N.E. 16, 17.) The New York court held that this language constituted a binding agreement. In that case, there was a present agreement between the parties for execution of a lease and the only issue remaining open was the form of the proposed lease. Quite to the contrary, in the case at bar the language used first by plaintiff itself and then in even stronger form by defendant is to the effect that neither party will be bound in any manner without the execution of a formal and definitive agreement.

In *Evans, Inc. v. Tiffany & Co.* (N.D. Ill. 1976), 416 F. Supp. 224, both parties executed a letter of intent under which Tiffany was to obtain a lease from Evans which was to be executed by a fixed future date. As the court there pointed out, all of the necessary provisions of the proposed lease were contained in the executed letter. The court specifically noted also the absence in the letter of a provision, so strongly emphasized in the case before us, that the parties did not intend to be bound without completion and execution of a formal document. (416 F. Supp. 224, 239.) *Evans, Inc.* is another authority which supports the result above reached.

The supreme court in *Borg-Warner Corp.*, 16 Ill. 2d 234, reversed a trial court order dismissing an amended complaint for specific performance. There is no need to state and analyze the facts in *Borg-Warner* for two reasons. First, the lengthy offer written by plaintiff giving defendant an option to purchase plaintiff's business was expressly found by the supreme court to be ambiguous so that parol evidence was admissible and necessary to ascertain the intention of the parties. (16 Ill. 2d 234, 241.)

For that reason the supreme court reversed the order dismissing plaintiff's case on the pleadings so that there could be a trial to determine the intention of the parties by parol evidence. (16 Ill. 2d 234, 243-44.) Secondly, as in *Evans*, the writings relied on as evidence of the contract in *Borg-Warner* contained no language expressly conditioning contractual intent upon execution of a definitive written agreement.

In *Ammerman v. City Stores Co.* (D.C. Cir. 1968), 394 F.2d 950, defendant gave plaintiff an option to obtain a shopping center lease "with rental and terms at least equal to that of any other major department store in the center." (394 F.2d 950, 953.) The court of appeals held that the option was complete and definitive in itself so that it could be and was enforced according to its terms. The issue involved in the case at bar was neither decided nor discussed in *Ammerman*.

■■ Plaintiff also raises the arguments of waiver and estoppel. These legal concepts, often confused and intermingled, are actually quite separate. This court has had occasion to state the accepted and classic definition of waiver as "the intentional relinquishment of a known right." (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 461, 323 N.E.2d 521, *appeal denied*, 58 Ill. 2d 596, and cases there cited.) Estoppel as a general matter refers to "reliance by one party, to the extent of a change of position to his detriment in good faith, upon the conduct of the other as a result of which that other party will not be permitted to raise a contention inconsistent with his misleading conduct." *Allstate*, 25 Ill. App. 3d 449, 461-62, and additional authorities there cited.

Considering estoppel first, it is apparent that plaintiff did not change its position in any manner and suffered no detriment because of any conduct or representation by defendant. On the contrary, as above mentioned, plaintiff can claim only deprivation of a possible future benefit. There is no element of estoppel in the record before us. The doctrine of waiver could be operative here with reference to the time limit of January 15, 1976, as expressed in the letter of December 11, 1975. The parties, with full knowledge of this limitation, continued their negotiations after that date. Thus, it may be stated that both of the parties waived this provision or that they agreed to disregard it as a mutual understanding. However, that is by no means decisive or even important in determining the rights of these parties.

Plaintiff's reply brief cites and relies upon *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 360 N.E.2d 551. We cannot find similarity between the two situations. In *Pierce*, defendants undertook in a settlement agreement to obtain a legal opinion from a designated law firm approving the settlement with reference to the legal powers of certain corporate directors. Although the parties agreed that defendant had actually submitted the matter to the designated law firm,

the legal opinion had never been received. This court refused to conclude that the condition was not fulfilled. The remaining condition was disposal of a pending class suit in a manner satisfactory to counsel for defendants. By the time the class suit had been disposed of by consent decree, four members of the class had withdrawn. We held that since defendants had entered into the consent decree incorporating the settlement agreement with full knowledge of the previous withdrawal of four parties, this accomplished withdrawal could not be used as a basis for setting aside the settlement agreement.

Upon due consideration of each and all of the arguments thus raised by plaintiff, we have concluded that the judgment order denying specific performance was proper and it is accordingly affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.