# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-3762

———————

| | | |
|---|---|---|
| Evergreen Investments, LLC, a<br>Montana limited liability company, | * <br> * <br> * | |
| Appellant, | * <br> * | Appeal from the United States<br>District Court for the |
| v. | * <br> * | Western District of Missouri. |
| FCL Graphics, Incorporated, an<br>Illinois corporation, | * <br> * <br> * | |
| Appellee. | * | |

———————

Submitted: May 15, 2003

Filed: July 2, 2003

———————

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

In this diversity action, the district court[1] granted summary judgment against Evergreen Investments, LLC (Evergreen), concluding that a letter of intent signed by Evergreen and FCL Graphics, Incorporated (FCL) did not constitute a binding agreement for the purchase and sale of FCL. We affirm.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

## I. Background

Evergreen is a Montana limited liability company, with offices in Missouri, that was formed to manage the investment activities of Robert Plaster and his family. FCL is a commercial printing company located in Harwood Heights, Illinois. In September 1997, discussions began concerning the sale of FCL to Evergreen. After two years of negotiations, Larry Weis, Evergreen's chief financial officer, and Frank Calabrese, FCL's president, signed a letter of intent, dated August 30, 1999. This letter, approximately two and one-half pages in length, "outlin[ed] the essential terms of an agreement between [FCL] and [Evergreen] pursuant to which a newly formed entity created by Evergreen ('Newco') will acquire 100% of the assets of FCL and related entities for $53 million (the 'Purchase Price')." The first part of the letter set forth, in detail, the purchase price, what that price included, and how it would be paid. After discussing Calabrese's role as a consultant for Newco, the letter provided that:

> The above-referenced terms are intended to form the basis and general understanding of the proposed acquisition. Binding terms and conditions for a potential transaction will depend on a number of factors, including but not limited to, the satisfactory completion of legal, business and financial due diligence investigations, and negotiation and execution of definitive legal documentation, including non-competition agreements with all existing owners.

> Any proposed transaction will be subject to Evergreen's ability to arrange financing, on terms satisfactory to Evergreen, sufficient to consummate the acquisition and provide adequate working capital to meet the Company's on-going liquidity requirements and other obligations. The Seller agrees to cooperate fully with Evergreen in arranging such financing. In addition, any proposed transaction will be subject to certain legal, regulatory and other necessary third party approvals.

The letter concluded with the following language:

Subject to the above conditions, both parties hereto agree to use all their best efforts in good faith to close this transaction under the terms materially and substantially outlined herein within a reasonable time. In addition, by executing this Letter of Intent, Seller agrees to grant Evergreen a 90-day exclusivity period to consummate the proposed transaction. During such exclusivity period, Seller will not, directly or indirectly, engage in, conduct or entertain offers or discussions with any other person or party regarding a transaction of any kind involving the Company.

On September 27, 1999, FCL's counsel notified Evergreen that FCL "[had] elected to terminate the Letter of Intent and all negotiations and other discussions concerning the sale of the assets of [FCL], or any other transaction between FCL, its shareholders, and Evergreen." By letter dated October 7, 1999, Evergreen advised FCL that it "ha[d] no right unilaterally to 'elect' to 'terminate' the Letter of Intent, which [was] a binding agreement between FCL and Evergreen," and that "Evergreen [was] fully prepared to move forward with its obligations under the Letter of Intent." After these letters were exchanged, negotiations ended and the sale did not take place.

Evergreen filed suit in Missouri state court, and the case was subsequently removed to the United States District Court for the Western District of Missouri. In its first amended complaint, Evergreen alleged breach of contract, breach of duty to negotiate in good faith, and fraud. Evergreen also sought to recover under a theory of promissory estoppel. FCL moved for summary judgment on all four counts. With respect to the breach of contract claim, FCL argued that the plain language of the August 30 letter demonstrated that the parties did not intend the letter to be a binding contract for the purchase and sale of FCL. The district court summarily denied FCL's motion, concluding that material factual issues remained as to each of Evergreen's claims. Evergreen then filed a motion in limine asking the court "to exclude evidence outside the four corners of the parties' contract dated August 30, 1999." According to Evergreen, "[e]xtrinsic evidence [was] neither relevant nor admissible, because it [was] clear and unambiguous from the face of the parties' written agreement that they

formed a contract for the sale and purchase of the assets of Defendant [FCL], and intended to be bound by their agreement." In denying this motion, the district court found the August 30 letter to be ambiguous as to the parties' intent to be bound. Shortly before trial, however, the court reversed its ruling and entered an order granting FCL's motion for summary judgment on counts one and four of Evergreen's complaint, the breach of contract and fraud claims. In a later order, the court explained that "the clear language of the face of the letter" demonstrated that the parties did not intend the August 30 letter to be a binding contract for the purchase and sale of FCL. Having voluntarily dismissed its two remaining claims, Evergreen now appeals, arguing that the district court erred by granting FCL's motion for summary judgment on the breach of contract claim.

## II. Analysis

"We review de novo a grant of summary judgment, applying the same standard as the district court." Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002) (citation omitted). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Thomas v. Union Pac. R.R. Co., 308 F.3d 891, 893 (8th Cir. 2002) (citation omitted). In this diversity case, we also review the district court's interpretation of state law de novo. Walk v. Starkey Mach., Inc., 180 F.3d 937, 939 (8th Cir. 1999) (citing Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991); Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir. 1996)).

## A.

The district court determined that Illinois law governs Evergreen's claims, a ruling that neither party contests. The Seventh Circuit, in applying Illinois law, has recognized that "it is a common commercial practice for two negotiating parties to

sign a letter of intent or an agreement in principal, signaling that they have come to a tentative agreement on the general outlines of a deal without having nailed down all of the details." Ocean Atl. Dev. Corp. v. Aurora Christian Sch., Inc., 322 F.3d 983, 995 (7th Cir. 2003) (citing Empro Mfg. Co. v. Ball-Co Mfg., Inc., 870 F.2d 423, 424 (7th Cir. 1989)); see Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir. 1993). Whether such a letter reflects a binding agreement between the parties "turns not on what the parties subjectively believed, but on what they expressly manifested in their writing." Ocean Atl. Dev. Corp., 322 F.3d at 995 (citing Empro Mfg. Co., 870 F.2d at 425); Venture Assocs. Corp., 987 F.2d at 432. Thus, in accordance with traditional contract principles:

> A . . . court must initially determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent. If no ambiguity exists in the writing, the parties' intent must be derived by the . . . court, as a matter of law, solely from the writing itself. If the terms of an alleged contract are ambiguous or capable of more than one interpretation, however, parol evidence is admissible to ascertain the parties' intent. If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact . . . .

Quake Constr., Inc. v. Am. Airlines, Inc., 565 N.E.2d 990, 994 (Ill. 1990) (citations omitted); see also Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999) (noting that an ambiguity is present when "the language of the [alleged] contract is susceptible to more than one meaning").

The parties agree that the first question before us is whether the August 30 letter, viewed as a whole, is ambiguous as to their intent to be bound. We conclude that it is not. The clear language of the letter demonstrates that the parties did not intend the letter to constitute a binding agreement for the purchase and sale of FCL.

The first several paragraphs of the letter, which outline the purchase price, items to be purchased, and manner of payment, indicate that the parties had reached an agreement on the major issues, leaving minor issues for future negotiations. The remainder of the letter, however, clarifies that this was a "proposed acquisition" and a "potential transaction" that "depend[ed] on" and was "subject to" several factors and conditions, including, but not limited to, "the satisfactory completion of legal, business and financial due diligence investigations, and negotiation and execution of definitive legal documentation, including non-competition agreements with all existing owners," as well as "certain legal, regulatory and other necessary third party approvals." See Empro Mfg. Co., 870 F.2d 423 (concluding that a letter of intent was not binding where the letter set forth "the general terms and conditions" of the proposed sale and such terms were subject to "the satisfaction of certain conditions precedent to closing," including, but not limited to, the execution of a definitive Asset Purchase Agreement and approval by the buyer's shareholders and board of directors). Despite Evergreen's suggestion to the contrary, the letter's "subject to" and "depend[ing] on" clauses are more than mere contemplations that the parties' agreement would later be formalized by legal counsel. See Quake Constr., Inc., 565 N.E.2d at 993 ("The fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements mere negotiations, where it is clear that the ultimate contract will be substantially based upon the same terms as the previous document. If the parties . . . intended that the . . . document be contractually binding, that intention would not be defeated by the mere recitation in the writing that a more formal agreement was yet to be drawn." (quotation marks and citations omitted)). Thus, while recognizing that "the word 'subject' does not have unvarying, talismanic significance in contracts analysis," Magallanes Inv., Inc. v. Circuit Sys., Inc., 994 F.2d 1214, 1218-19 (7th Cir. 1993), we are persuaded that the parties' use of the term, followed by specific conditions, is indicative of the tentative nature of their agreement for the purchase and sale of FCL. See Interway, Inc. v. Alagna, 407 N.E.2d 615, 620 (Ill. App. Ct. 1980) (citing additional provisions which, when read in conjunction with the letter's "subject to"

language, clearly "indicate[d] the inconclusive state of the negotiations between the parties at the time the letter was signed").

The final paragraph of the August 30 letter also demonstrates the parties' intent not to be bound, as it confirms that they were merely agreeing to use their "best efforts in good faith" to try and reach an agreement "materially and substantially" similar to the terms outlined in the letter. To facilitate subsequent negotiations, FCL agreed to "a 90-day exclusivity period to consummate the proposed transaction." There would seem to be little need for an exclusivity period "to consummate" the deal if the parties intended to be bound to a sale at the time the letter was signed.

Evergreen reminds us that the district court, on two occasions, had determined that the August 30 letter was facially ambiguous as to the parties' intent, and points to these rulings as "powerful evidence that the letter is not as clear on its face as FCL argues now." We disagree. "A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1070 (8th Cir. 2000) (quoting Flora Bank & Trust v. Czyzewski, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991)). We similarly are persuaded that an agreement is not rendered ambiguous simply because a district court reversed its prior rulings as to the meaning of certain language within the agreement. Cf. Ford v. Dovenmuehle Mortgage, Inc., 651 N.E.2d 751, 755 (Ill. App. Ct. 1995) ("Although other courts and other judges have reviewed similar contractual language and have reached differing conclusions, we are not compelled to adopt their conclusions with respect to our determination of ambiguity. Moreover, the mere fact that they have reached different conclusions, some finding ambiguity and some not, does not compel us to find the existence of an ambiguity." (citation and note omitted)). As indicated above, we review de novo the issue of whether the letter is ambiguous. Having done so, we are satisfied that the letter as a whole "is patently clear and definite," and that "[t]here [is] no room for difference of opinion," Terracom Dev. Group, Inc. v. Coleman Cable & Wire Co., 365 N.E.2d 1028, 1031 (Ill. App. Ct. 1977): the parties

simply agreed to use their best efforts to try to reach an agreement in accordance with the terms outlined in the letter. We therefore conclude that no ambiguity exists on the face of the letter.

This, however, does not end our inquiry. Although traditional contract law requires application of the "four corners" rule, whereby courts initially look to the language of the contract alone to determine whether the contract is ambiguous, Air Safety, Inc., 706 N.E.2d at 884, Illinois appellate courts have recognized that "the current trend in Illinois law . . . allows a court to consider [extrinsic] evidence provisionally to determine if an agreement that appears to be clear on its face is actually ambiguous," Ahsan v. Eagle, Inc., 678 N.E.2d 1238, 1241 (Ill. App. Ct. 1997) (citation omitted). Under the "provisional admission" or "extrinsic ambiguity" approach, "an extrinsic ambiguity exists 'when someone who knows the context of the contract would know if the contract actually means something other than what it seems to mean.'" Air Safety, Inc., 706 N.E.2d at 885 (quoting Ahsan, 678 N.E.2d at 1241). The Illinois Supreme Court has rejected the provisional admission approach in those cases where the contract at issue contains an explicit integration clause. Id. at 885-86. It nevertheless "expressly decline[d] to rule" on whether the approach may be applied to interpret a contract that does not include such a clause. Id. at 885 n.1.

"[W]here the state's highest court has not ruled, we must follow the decisions of the state's intermediate courts when they are the best evidence of what the state's law is." Swope v. Siegel-Robert, Inc., 243 F.3d 486, 496 (8th Cir. 2001) (citations omitted); see also Air Safety, Inc., 706 N.E.2d at 885 (noting that Illinois appellate courts have applied the provisional admission approach in a variety of cases); Home Ins. Co. v. Chicago & Northwestern Transp. Co., 56 F.3d 763, 767-69 (7th Cir. 1995) (discussing this approach). FCL has not directed us to any "persuasive data" suggesting that the Illinois Supreme Court would categorically reject the provisional admission approach adopted by the state's appellate courts. See Swope, 243 F.3d at

496.  In the absence of such data, we turn to the extrinsic evidence submitted by Evergreen.

"A party that asserts extrinsic ambiguity is entitled to present to the court objective evidence, i.e. evidence that cannot be faked and can be supplied by disinterested third parties."  Ahsan, 678 N.E.2d at 1241 (citing Home Ins. Co., 56 F.3d at 768).  To support its extrinsic-ambiguity claim, Evergreen directs us to the following:  (1) the testimony of its chief negotiator, who explained why the terms "potential," "contemplated," and "proposed," were used in the August 30 letter, (2) the "history of the negotiations between the parties," including several prior drafts of the August 30 letter, and (3) evidence relating to FCL's negotiations with other potential buyers, including several letters of intent with language expressly stating that the letters were not binding.  This evidence, Evergreen argues, was sufficient to defeat summary judgment.  We disagree.

Initially, we note that much of the evidence cited by Evergreen does not seem to be the type of "objective" evidence that Illinois courts are willing to consider in determining the existence of an extrinsic ambiguity.  See, e.g., Ocean Atl. Dev. Corp., 322 F.3d at 1002-04 (concluding that the buyer's extrinsic evidence, which included evidence relating to the extent of the parties' negotiations, was not admissible, as such evidence "focuse[d] on the parties' own, subjective construction of the offers and whether or not they were binding").  Furthermore, even if it were, we see nothing in the record suggesting that the clear language of the August 30 letter should be construed differently, thereby creating doubt as to its meaning.  See Home Ins. Co., 56 F.3d at 770-71.  In short, Evergreen's evidence simply does not indicate that the letter "means something different from what it seems to mean."  AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc., 44 F.3d 572, 577 (7th Cir. 1995).  We are therefore satisfied that the August 30 letter of intent did not constitute a binding agreement for the purchase and sale of FCL.

## B.

Evergreen contends that the district court's summary judgment rulings were flawed for a second reason. While acknowledging that its breach of contract claim "undoubtedly center[ed] on FCL's obligation to sell its assets to Evergreen," Evergreen points out that count one of its complaint also included allegations "that FCL had breached other obligations expressly set out in the August 30 letter agreement, beyond the obligation to sell its assets to Evergreen." Specifically, Evergreen alleged that "FCL breached its contractual obligation to allow Evergreen a 90-day exclusivity period to consummate the deal," and that "FCL breached its contractual obligation to 'use all [its] best efforts in good faith to close' the Evergreen-FCL deal under the terms of the letter of intent." (Pl.'s First Am. Compl. ¶¶ 23, 24 (alteration in original).) Noting that the district court failed to address these additional obligations in its summary judgment orders, Evergreen urges us to remand the breach of contract claim for further review. We decline to do so.

In its opposition to FCL's motion for summary judgment, Evergreen asserted that FCL's motion "challeng[ed] only Evergreen's claim that the August 30 contract was a binding contract for the parties' ultimate contractual objective: the sale of FCL to Evergreen," while ignoring Evergreen's allegations regarding the exclusivity and best efforts clauses. Nevertheless, after the district court apparently failed to consider these clauses in granting summary judgment on Evergreen's breach of contract claim, Evergreen did not alert the court to its error. "'A party may not stand idly by, watching the proceedings and allowing the district court to commit error on which the party subsequently complains.'" Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999) (quoting Becker v. Univ. of Neb., 191 F.3d 904, 909 n.4 (8th Cir. 1999); McNeely v. United States, 353 F.2d 913, 917 (8th Cir. 1965)). In light of Evergreen's failure to take "affirmative action immediately following the entry of judgment to call the district court's attention to the fact that it had not [addressed the exclusivity and

-10-

best efforts clauses]," we are satisfied that Evergreen has waived its right to assert these arguments on appeal.  Id. at 974-75; see Becker, 191 F.3d at 909 n.4.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.