# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3153

_____

Anitra D. Davis,                *
                              *
            Appellant,      *
                              *    Appeal from the United States
       v.                    *    District Court for the
                              *    District of Minnesota.
U.S. Bancorp, doing business as     *
U.S. Bank National Association;     *
John Doe; Mary Roe; Persons       *
Unknown,                     *
                              *
            Appellees.      *

_____

Submitted: June 16, 2004
Filed: September 10, 2004

_____

Before WOLLMAN, HEANEY, and BOWMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Anitra D. Davis appeals from the district court[1] order granting summary judgment to U.S. Bancorp (U.S. Bank) in her lawsuit alleging violations of numerous

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

statutes, fraud, and negligent misrepresentation by the bank in its handling of her loan application. We affirm.[2]

# I.

We view the facts in a light most favorable to Davis. Davis met with U.S. Bank loan officer Russ Douville in February 2000 to apply for a mortgage. She informed the bank that she was participating in a Consumer Credit Counseling Service (CCCS) payment plan. Davis filled out and completed an application packet. Upon approval by Cendant Mortgage Services (Cendant), the underwriter for the loan, she received a commitment letter for a 30-year FHA mortgage in the amount of $77,330. As the homes Davis was interested in required more financing, she began exploring additional financing options. She eventually found a home that would also provide her income from a renter and intended to convert her FHA loan to a Minnesota Housing Finance Agency (MHFA) conventional loan. Her real estate agent, Tim Renn, contacted Douville on May 18, 2000 to request a pre-approval letter for a specific piece of property, as he had done each time Davis desired to make an offer on a home. Douville faxed a credit pre-approval letter that made the following statements:

> Based upon the information [Davis] has supplied . . . , the borrower
> qualifies for an MHFA Conventional CASA loan amount sufficient to
> purchase the property . . . .

---

[2]We briefly address the parties' post-argument motions here. We deny Davis's July 26, 2004, motion to supplement the record, as well as her motion to strike U.S. Bank's 28(j) letter of June 16, 2004. We note, however, that 28(j) letters are to be used only to call our attention to significant authorities unknown to the parties pre-argument, and should not contain argument. Fed. R. App. P. 28(j); Home Builders Ass'n v. L&L Exhibition Mgmt., Inc., 226 F.3d 944, 951 (8th Cir. 2000). The authorities cited should consist of "intervening decisions or new developments." 8th Cir. R. Appx. III(I)(2) (2004). We disregard the parties' submissions insofar as they include material outside these limitations.

> The above determination would be subject to full verification of the items stated above . . . , as well as the selection of an approvable property . . . .
>
> This letter is not to be construed as a commitment letter but a credit pre-approval based on an in-file credit report.

Appellant's App. at 188. Davis successfully bid on the property and scheduled a closing for July 20, 2000. Davis then paid U.S. Bank a $375 loan application fee and continued to make preparations for moving.

Cendant, the processor and underwriter for Davis's MHFA conventional loan application, requested more information from Davis. Kim Parker, a Cendant employee who worked on Davis's case and with whom Davis had numerous contacts, requested the final items in July 2000, and Davis faxed them on July 14. On July 18, after Cendant had become aware that the application was for a conventional loan instead of an FHA loan, it declined the conventional loan application, stating that Davis was ineligible because of her involvement in CCCS. On July 21, Douville e-mailed Davis, explaining the situation and making other recommendations on how to proceed. He told Davis that his bank was trying to process an FHA loan but needed to address the seller's concerns about such loans; he also mentioned the possibility of a purchase rehab loan. In a later conversation, Douville offered Davis a Home Advantage loan through U.S. Bank, for which the bank had agreed to override the credit requirements. Davis declined the Home Advantage offer because it was a market rate loan and would require a higher monthly payment. As a result, Davis had to cancel the purchase agreement and quickly search for a new apartment to rent.

Davis filed complaints with both the Office of the Comptroller of the Currency and the Better Business Bureau of Minnesota on July 25. She received communication from U.S. Bank in response to her complaint, and informed U.S.

-3-

Bank of her change of address. On August 22, a notice of adverse action was sent from Cendant on behalf of U.S. Bank, indicating that the loan was not granted on the terms requested. Davis did not receive the notice, which was mailed to her former address.

Davis filed a claim in state court, which was removed to federal court. Following discovery, U.S. Bank moved for summary judgment on all claims and submitted several affidavits in support of its motion. Davis moved to strike one of the affidavits. The district court denied the motion to strike and granted the motion for summary judgment.

**II.**

Davis argues that summary judgment is inappropriate on her claims because material issues of fact remain as to whether a notice of adverse action was properly and timely sent to her and whether U.S. Bank knowingly made misrepresentations to her. We review a grant of summary judgment de novo. Evergreen Invs., LLC v. FCL Graphics, Inc., 334 F.3d 750, 753 (8th Cir. 2003). Summary judgment is proper if, after viewing the evidence and construing it in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. Once the moving party meets its burden to show that there is no issue of material fact, the plaintiff may not then simply point to allegations made in her complaint, but must "provide evidence of 'specific facts creating a triable controversy.'" Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004) (quoting Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999)); Fed. R. Civ. P. 56(e) (2003).

As a preliminary matter, Davis argues that the district court erred in denying her motion to strike the affidavit of Cendant Vice President Laurie Marrone and the August 22, 2000, notice of adverse action that U.S. Bank submitted when it moved for summary judgment. Davis contends that U.S. Bank violated discovery rules by

not disclosing Laurie Marrone as a source of information in its initial rule 26 disclosure. Fed. R. Civ. P. 26(a)(1)(A). She therefore asserts that the district court should have refused to consider the evidence in connection to the motion for summary judgment. See Fed. R. Civ. P. 37(c)(1). We review a district court's discovery ruling for abuse of discretion. Land Inv. Club, Inc. v. Lauer (In re Lauer), 371 F.3d 406, 415 (8th Cir. 2004). We will reverse a decision to exclude or admit only if the court based its decision on "'an erroneous view of the law or a clearly erroneous assessment of the evidence,'" Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998) (citation omitted), such that to affirm would result in "fundamental unfairness." Lauer, 371 F.3d at 415.

Rule 37 does not provide for mandatory sanctions, and the district court may find that a party's failure to include a witness in the initial Rule 26(a)(1) disclosures was substantially justified or harmless. Rule 37(c)(1); Trost, 162 F.3d at 1008. Here the district court reasonably found that there was no unfair surprise because Davis had knowledge of Cendant's role in the processing of her loan and because U.S. Bank was unaware of Laurie Marrone as a potential witness until May 2003. Davis has failed to explain how an earlier disclosure of Laurie Marrone's testimony "would have enabled her to avoid summary judgment." Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003). The district court therefore did not abuse its discretion when it denied the motion to strike.

## A.

Davis argues that the district court erred in granting summary judgment for U.S. Bank on her claims under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 (2000). ECOA, along with the corresponding Regulation B, 12 C.F.R. § 202 (2000), is intended to curb discrimination by creditors. In addition to a generalized prohibition of discrimination, it also establishes procedural requirements for extending credit and communicating with applicants. See 12 C.F.R. § 202.1(b)

(outlining the purpose of the regulation). One such requirement is that of notice. ECOA states:

> Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

15 U.S.C. § 1691(d)(1). Davis argues that a material issue of fact exists as to whether notice was sent to her because she never received it and that, even if notice was sent, it was untimely.[3]

Davis asserts that Marrone's affidavit alone provides inadequate evidence that the notice was in fact sent to her. We disagree. We apply a presumption that a properly mailed document is received by the addressee. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 947 (8th Cir. 1999). That presumption may arise based on circumstantial evidence, including testimony by someone familiar with company procedures and practices that the letter was sent. See Kennell v. Gates, 215 F.3d 825, 829-30 (8th Cir. 2000). The Marrone affidavit asserts that the notice conformed with Cendant underwriting procedures used for U.S. Bank loan applications and was sent "[o]n or about August 22, 2000." Appellant's App. at 320-21. Absent contradictory evidence, the affidavit is sufficient to establish that the notice was sent, implicating the presumption that it was also received.

Summary judgment was proper however, only if the notice that was sent was timely. Davis asserts that the 30-day limit specified in 15 U.S.C. § 1691(d)(1) applies in this context and that the notice was thus untimely sent. She states that she applied for the conventional loan on May 18, 2000, and that the notice was not sent until 96

---

[3]We conclude that the content of the August 22, 2000, notice of adverse action, on its face, meets the requirements of 15 U.S.C. § 1691(d)(2).

days later. U.S. Bank asserts, however, that Davis's application was not complete until July. It argues that because it extended a counteroffer within thirty days, it had an additional ninety days from the date of the counteroffer within which to send the notice of adverse action. See 12 C.F.R. § 202.9.

The statute states that the thirty days begin to run once the application is complete. 15 U.S.C. § 1691(d)(1). The application is deemed complete "[o]nce a creditor has obtained all the information it normally considers in making a credit decision." 12 C.F.R. Pt. 202, Supp. I, comment 9(a)(1)-1 (2000) (Federal Reserve Board official staff interpretation of Regulation B). An inquiry about credit may become an application, but it "depends on how the creditor responds to the applicant, not on what the applicant says or asks." 12 C.F.R. Pt. 202, Supp. I, comment 2(f)-3 (2000).

No genuine issue of material fact exists as to whether U.S. Bank violated the ECOA time frame. Having already secured approval for a $77,330 FHA loan, Davis inquired into other loan options in April and May 2000. She began to seek a conventional loan in May 2000, but U.S. Bank and Cendant did not have all the information necessary to process her new application until mid-July 2000. The pre-qualification letter issued in May 2000 did not convert the conversation of May 18 into a completed application. The letter expressly stated that it was "not to be construed as a commitment letter but a credit pre-approval" and that it was "subject to full verification." Appellant's App. at 188. We therefore conclude that Davis's application for a conventional loan was complete in mid-July.

ECOA and Regulation B both state that, once the application for credit is complete, a creditor has thirty days to either approve, deny or make a counteroffer on the application. 12 C.F.R. § 202.9(a)(1)(i). In this case, undisputed testimony establishes that, between July 19-22, shortly after U.S. Bank found out that Cendant could not approve Davis for a conventional loan, it offered her a Home Advantage

loan that included a higher interest rate and a waiver of certain credit requirements. That counteroffer was made approximately one week after the application was completed, well within the thirty-day limit.

Regulation B provides that, once a counteroffer has been made, the time limit for sending a notice of adverse action begins anew, and the creditor then has ninety days to send a notice of adverse action to the applicant if she does not accept or use the new credit offered. 12 C.F.R. § 202.9(a)(1)(iv). The adverse action notice of August 22, 2000, therefore satisfies the timeliness requirement, and summary judgment was appropriate as a matter of law on the ECOA claim.

**B.**

We also affirm summary judgment on the remaining state statutory and common law claims.

Davis may not bring claims under the Minnesota statutes she has addressed unless she has prudential standing as a party intended to be included as a claimant under the private attorney general statute, Minn. Stat. § 8.31, subd. 3a.[4] Prudential principles of standing are statutorily imposed jurisdictional limitations separate from and in addition to constitutional standing requirements. Friends of the Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1125 (8th Cir. 1999). U.S. Bank challenged Davis's standing, and the district court concluded that Davis failed to meet the threshold requirement "that her causes of action benefit the public." D. Ct. Order of July 23, 2003, at 7. Even if U.S. Bank had not raised the argument, it was appropriate for the district court to determine whether each claim is properly before it by asking "'whether the interest sought to be protected by the complainant is

---

[4]Davis' complaint raised claims under the Minnesota Residential Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.13; the Minnesota Consumer Fraud Act, Minn. Stat. § 325f.68; and the Uniform Deceptive Trade Practices Act, Minn. Stat. § 325d.43.

arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Bennett v. Spear, 520 U.S. 154, 163 (1997) (quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)). We look to "the language of the statutory provision at issue" to determine the intended breadth of the provision, Dombeck, 164 F.3d at 1125, in this case as interpreted by the Minnesota Supreme Court.

Minnesota's private attorney general statute, Minn. Stat. 8.31 subd. 3a, allows individuals to seek damages by standing in place of the attorney general to enforce certain laws regarding "unfair, discriminatory, and other unlawful practices in business, commerce or trade" that the state attorney general is charged with enforcing. Minn. Stat. § 8.31 subd.1. The Minnesota Supreme Court has ruled that such private actions may be brought only if they benefit the public. Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000). Litigation over an alleged misrepresentation that was made only to one person "does not advance state interests and enforcement has no public benefit." Ly, 615 N.W.2d at 314; see also Collins v. Minn. Sch. of Bus., 655 N.W.2d 320, 330 (Minn 2003) (finding that, because the misrepresentations about educational programs were made to the public at large in a television advertisement, successful prosecution of the claims would therefore benefit the public).

Davis argues that her case is distinguishable from Ly because her experience with U.S. Bank reflects its broad treatment of others. That argument, however, is the very foundation for the limitation elaborated in Ly. 615 N.W.2d at 314. The class of plaintiffs under the private attorney general statute would be limitless if we assumed that one individual's negative experience with a company was necessarily duplicated for every other individual and on that basis treated personal claims as benefitting the public. Such an assumption might well render nearly every private suit alleging fraud a public benefit case. Davis had a private transaction with U.S. Bank in which poor communication and confusion on both sides resulted in the

cancellation of a purchase agreement. But Davis can complain only about her individual experience with U.S. Bank, and she has not presented evidence that misrepresentations were made to the public at large. She is therefore barred from raising her claims under the particular state statutes she alleges were violated.

Davis's common law fraud and misrepresentation claims also fail.[5] Summary judgment was appropriate because Davis's allegations and evidence after discovery have left "a complete failure of proof concerning [ ] essential element[s]" in the torts, entitling U.S. Bank to judgment as a matter of law. See Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate when the nonmoving party has failed to establish an element essential to the prima facie case on which she will bear the burden of proof at trial. Id. at 322.

In order to make a fraud claim, a plaintiff must demonstrate:

> [T]hat [the] defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation [and] (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

Heidbreder v. Carton, 645 N.W.2d 355, 367 (Minn. 2002) (quoting M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992)) (alteration in original). Davis has failed to provide evidence that the representations on May 18 were false or that U.S. Bank intended to induce her to act on a mistaken belief. U.S. Bank never said that

_____

[5]Insofar as Davis can be construed as having raised a promissory estoppel claim, we hold that, as a matter of law, the facts as alleged do not rise to the level of promissory estoppel. See Martens v. Minnesota Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (describing a prima facie case for promissory estoppel).

Davis was approved for the loan, but merely indicated that she was qualified based on the data it had at the time. It is undisputed that the May 18 letter stated that it was not a commitment letter. Viewing the facts in Davis's favor, they are insufficient as a matter of law to support a claim of fraud.

"A misrepresentation is made negligently when the misrepresenter has not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Florenzano v. Olson, 387 N.W.2d 168, 174 (Minn. 1986). U.S. Bank owed Davis a duty of care because she was already a client who had applied for a prior loan and U.S. Bank was providing information for guidance in "a transaction in which [she had] a pecuniary interest." Id. at 174 n.3. Davis, however, has failed to provide evidence that the specific information given to her was false or that she was justified in relying on her perception that she was approved for the loan. The May 18 letter communicated to Davis and her real estate agent that Davis was qualified for the conventional loan, based on the information the Bank had at the time. The letter clearly stated, however, that the request was not yet approved and was conditioned on "full verification" and "the selection of an approvable property." Appellant's App. at 188. Based on the undisputed facts, no reasonable jury could conclude that U.S. Bank committed fraud or was guilty of negligent misrepresentation.

The judgment is affirmed.

_____