# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3115

———————

City of Marshall, Minnesota,            *
suing as City of Marshall, Minnesota,  *
by and through the Marshall          *
Municipal Utilities,               *
                                 *
        Appellee,            *   Appeal from the United States
                               *   District Court for the
    v.                    *   District of Minnesota.
                               *
Heartland Consumers Power District,  *
                               *
        Appellant.          *

———————

Submitted:  May 10, 2004
Filed:  September 13, 2004

———————

Before LOKEN, Chief Judge, BRIGHT, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

The City of Marshall ("Marshall") operates an electric utility and buys its power from Heartland Consumers Power District ("Heartland"). In 1998, Marshall sued Heartland for breach of contract and violations of statutory requirements. The litigation was aborted after the parties entered into a settlement agreement establishing reserve funds for various purposes, which included a process for refund to customers of excess reserve funds. In 2002, Marshall sued Heartland for breach of the settlement agreement alleging that Heartland failed to return excess reserve funds

to customers in accordance with the agreement. The district court agreed and granted summary judgment in favor of Marshall, ordering Heartland to pay Marshall $3,759,999.43.

On appeal, Heartland contends that the district court erred in its grant of Marshall's motion for summary judgment, and its denial of Heartland's counterclaim for summary judgment. Heartland more specifically argues that the district court misinterpreted the contract language and erred in ordering the refund to Marshall.

Although both parties agree that the terms of the agreement are unambiguous, at the heart of this dispute is whether Heartland has the unilateral right under the terms of the settlement agreement to change the funds' levels–at any time. We hold that it does and, therefore, reverse the district court's grant of summary judgment in Marshall's favor.

## I. *Discussion*

In 1999, Marshall and Heartland entered into a settlement agreement as a result of a long-running dispute between the two parties regarding refunds to Heartland's customers. The settlement agreement provided that Heartland would commit to establishing two separate funds, a Rate Stabilization Fund[1] ("RSF") and a General Reserve Fund ("GRF"). The Heartland Board would also develop written polices for the RSF, setting up guidelines for its sources, uses, replenishing, and levels. In addition, Heartland agreed "to implement a policy of cash position," whereby the

---

[1] The function of the RSF is to minimize the rate impact of power plant outages and other events that could create upward spikes in Heartland's rates. Heartland also expressly retained the right to utilize the RSF for other uses, related to power supply operations, in the event of unanticipated or emergency circumstances. Heartland retained similar rights with respect to the GSF.

company would maintain a set balance to be subtracted from the sum of the RSF and GRF. The parties agreed that any excess revenue shall be refunded to its customers.[2]

The relevant contract language includes the following: "Heartland will establish specified minimum and maximum levels of the RSF . . . on each occasion that the Heartland Board determines to replenish the RSF." Also, the agreement sets the maximum level of the RSF and the GRF at $1,250,000 and $2,500,00 respectfully "until further action by the Heartland Board." Additionally, Heartland reserved the right to use monies from both the RSF and GRF "in the event of unanticipated or emergency circumstances."

In its decision below, the magistrate interpreted the contract to limit the effective date of any reserve fund modifications by the Board to the next fiscal year. However, the contract itself has no such limitation. The magistrate believed its interpretation necessary because the Board's discretion could conceivably be misused to avoid ever paying refunds. The district court adopted the recommendation of the magistrate.

On appeal, Heartland argues that a plain reading of the contract requires the Board to develop policies for the funds before January 1, 2000, and set an initial maximum level of the funds. However, the contract did not identify any specific time or timetable for reconsideration of the initial fund levels. Instead, the contract only

---

[2] The agreement provides in section (c) Margins:

. . . After replenishing or drawing down the Rate Stabilization Fund and General Reserve Fund to the appropriate levels established by the Heartland policies set forth above, Heartland shall promptly within sixty (60) days following the presentation of Heartland's annual audit to the Heartland Board for each fiscal year, refund or credit to each of Heartland's customers any amount of unbudgeted cash reserves that may be available for distribution to its customers . . . .

specifies that Heartland will establish minimums and maximums for the funds. Thus, the initial maximum fund amount is set "[u]ntil further action by the Heartland Board . . . ." Based on the discretion accorded Heartland's Board, Heartland argues that we should decline to review its exercise of that discretion when there is no evidence of fraud, bad faith, or gross mistake of judgment. We agree.

We review the district court's interpretation of this settlement agreement and the grant of summary judgment de novo. *Evergreen Invs., LLC v. FCL Graphics, Inc.*, 334 F.3d 750, 754 (8th Cir. 2003). A settlement agreement between two parties is a contract, and, accordingly, is governed by contract principles. *Michalski v. Bank of Am.*, 66 F.3d 993, 996 (8th Cir. 1995). If possible, the intentions of the parties to a contract should govern. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 856–57 (Minn. 1986). We construe unambiguous contract language according to its plain meaning. Furthermore, judicial review of an unambiguous contract that leaves a decision to the discretion of one party is not warranted unless there is "fraud, bad faith, or a grossly mistaken exercise of judgment." *Brozo v. Oracle Corp.*, 324 F.3d 661, 667 (8th Cir. 2003) (citing *Vigoro Industries v. Crisp*, 82 F.3d 785, 785 (8th Cir. 1996)).

In its brief, Marshall responds that (1) "the plain language of the settlement agreement requires Heartland to refund or credit to its customers any amount in excess of budgeted cash reserves"; that (2) "the Heartland reserve fund contained excess cash reserves, requiring that Heartland return the excess amounts to its customers"; and (3) that "there are no unanticipated or emergency circumstances permitting deviation from the policy of refunding or crediting customers with any amount of unbudgeted cash reserves."

Because its first assertion fails, Marshall's entire argument fails. Although the agreement "requires Heartland to refund or credit to its customers any amount in excess of budgeted cash reserves," the plain language of the agreement allows

Heartland to change the budgeted cash reserves at its sole discretion, and thus, at any time. Hence, any decision by Heartland to change the fund levels also changes the formula for any refunds. Therefore, although Marshall's contention is technically correct, any amount of refund hinges on the level of budgeted reserves, and the level of budgeted reserves hinges on decisions vested solely in Heartland's Board.

Marshall contends that Heartland cannot be allowed to change the terms of the agreement on a whim, or retroactively, because to do so would allow Heartland to circumvent the main purpose of the agreement–which Marshall claims is to provide Heartland's customers with refunds. However, the contract does not indicate that customer refunds is its main purpose. Rather, it plainly states that "the RSF will be used to minimize the impact upon Heartland's rates to its customers due to any outage at the Laramie River Station . . . or other planned or unplanned events that could cause a sudden increase in rates charged to Heartland customers." As to the GRF, the contract authorizes Heartland to determine its uses and specifically identifies appropriate use to include capital improvements.

Heartland asserts that the main purpose of the agreement is to provide a system that would act as a shock absorber by using monies in the funds to subsidize rate increases, thereby avoiding sudden bill increases to its customers. The plain language of the agreement supports this argument. With the requisite deference to our holding in *Brozo*, and because there is no evidence of fraud, bad faith, or a grossly mistaken exercise of judgment, we see no basis for judicial review of Heartland's business decision based upon the parties' agreement. 324 F.3d at 667.

## II. *Conclusion*

In sum, we hold that under the agreement Heartland had the broad discretion to change the funding levels at any time. Accordingly, the cash position set by the Heartland Board did not exceed the sum of the RSF and GRF in any of the disputed years. Because the plain language of the settlement agreement was followed, there is

no need for us to address either the soundness of the district court's funding formula or what constitutes "unanticipated circumstances." For the foregoing reasons, we reverse the order of the district court and enter summary judgment in favor of Heartland.

_____